Stephen **BARNHILL**, Appellant,

v.

**AUTOMATED SHRIMP CORPORATION and Bill and Shirley Williams, Appellees.**

No. 10-06-00038-CV.

Court of Appeals of Texas, Waco.

March 28, 2007.

Stephen R. Fontaine, Stephen R. Fontaine, PC, Waco, Kenneth H. Tribuch, Schmidt & Hoffer LLP, Houston, for appellant.

Steven L. Moody, Dick Clark, Clark Clark & Howell LLP, Waco, for appellees.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

In this accelerated appeal, Stephen Barnhill challenges the denial of his special appearance on grounds that: (1) his communications with Texas are fortuitous; (2) certain actions were taken in his representative capacity and not directed at Texas; (3) his assistance with SEC filings is not connected to Texas; (4) his contractual obligations were not performable in Texas;

and (5) Texas jurisdiction violates notions of fair play and substantial justice. We affirm.

## FACTUAL BACKGROUND

Barnhill was chief executive officer of the Barnhill Group in Georgia. Bill G. Williams was chief executive officer of Direct Wireless Communications, Inc., a subsidiary of Direct Wireless Corporation, in Texas. Williams contacted Barnhill to discuss a merger. Eventually, DWCI acquired the assets of the Barnhill Group, including Barnhill's medical expertise and his 49% interest in "fractal genomics," a form of medical technology, and the assets of Fractal Genomics. Barnhill acquired approximately 50% of DWCI stock. Individually, Barnhill received 49% of the $500,000 paid for the Fractal assets and entered an employment agreement with DWCI. DWCI became Health Discovery Corporation of which Barnhill became CEO.

When stock issues arose, HDC sued Williams, Shirley K. Williams, and Automated Shrimp Corporation. The Williamses and ASC sued Barnhill, among others, as a third-party defendant. DWC and shareholders Gerald Easterling, Tim Holloway, Baptist Community Services, and the Guadalupe Family Limited Partnership intervened in the suit against Barnhill. Barnhill filed a special appearance which the court initially granted, but ultimately denied on motion for reconsideration. Barnhill challenges several of the court's conclusions of law:

A. Barnhill has been doing business in Texas as that term is defined under the provisions of § 17.042 of the *Texas Civil Practice & Remedies Code*, both with respect to contracts and torts.

B. In entering into a contract performable in Texas and subject to construction under Texas law and in directing representations to Texas residents in Texas, Barnhill has purposefully directed his activities toward Texas.

C. Misrepresentations made by a non-resident of Texas that are alleged to be false and that are made to a Texas resident and received in Texas are sufficient to constitute doing business in Texas.

D. The causes of action alleged by third-party plaintiffs and intervenors arise out of the contracts entered into by Barnhill and the representations made by him.

E. Barnhill's acts of doing business in Texas constitute sufficient minimum contacts with Texas for the exercise of jurisdiction over him in Texas in that he should have anticipated that, to the extent that his conduct was or is allegedly wrongful, he could be called to answer for it in a Texas court.

F. Barnhill's communications sent to and received by Bill Williams in Texas were made before Barnhill became an officer and director of HDC and were made in his individual capacity, so that Barnhill may be held personally liable to the extent that the communications were false and may be held to answer therefore in Texas.

G. If the representations made by Barnhill in the communications to Shirley Williams and Holloway in Texas are fraudulent as alleged, Barnhill can be held responsible for them in his individual capacity.

. . .

I. If Barnhill has made or caused or permitted to be made inaccurate or incomplete required reports to the SEC, thereby exposing HDC, a Texas corporation, to fines, penalties, and/or liabilities and damaging the interests of its shareholders, he may be held to answer to HDC's claims in Texas.

J. The exercise of personal jurisdiction over Barnhill on the claim made by third-party plaintiffs and intervenors meet the requirements of federal and state due process.

K. The exercise of such jurisdiction over Barnhill does not offend traditional notions of fair play and substantial justice.

## STANDARD OF REVIEW

 A plaintiff must plead "sufficient allegations" to bring a nonresident defendant within the long-arm statute. *BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 793 (Tex.2002). The defendant must then negate "all jurisdictional bases." *Id.* In considering the denial of a special appearance, we determine only the issue of jurisdiction, not liability. *See Michiana Easy Livin' Country Inc. v. Holten,* 168 S.W.3d 777, 791–92 (Tex.2005). We review a court's findings of fact for legal and factual sufficiency and its conclusions of law *de novo. See BMC Software,* 83 S.W.3d at 794.

## APPLICABLE LAW

 A Texas court may exercise personal jurisdiction over a nonresident defendant if: (1) the defendant has minimum contacts with Texas; and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *BMC Software,* 83 S.W.3d at 795. Minimum contacts arise if the defendant "purposefully availed" himself of the "privileges and benefits of conducting business in the foreign jurisdiction." *Id.*

Three aspects of this requirement are relevant here. First, it is only the defendant's contacts with the forum that count: purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of . . . the 'unilateral activity of another party or a third person.'" Second, the acts relied on must be "purposeful" rather than

fortuitous. Sellers who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to the jurisdiction of the latter in suits based on their activities. By contrast, a defendant will not be haled into a jurisdiction solely based on contacts that are "random, isolated, or fortuitous." Third, a defendant must seek some benefit, advantage, or profit by "availing" itself of the jurisdiction.

*Michiana,* 168 S.W.3d at 785 (internal citations omitted). We do not consider whether conduct is: (1) "surreptitious or fraudulent or the merits of such claims;" or (2) " 'directed,' or aimed at Texas, or the 'effects' were in Texas." *Lewis v. Indian Springs Land Corp.,* 175 S.W.3d 906, 917 (Tex.App.-Dallas 2005, no pet.).

 There must be "either minimum contacts sufficient to confer specific jurisdiction or continuous and systematic contacts sufficient to confer general jurisdiction." *I & JC Corp. v. Helen of Troy L.P.,* 164 S.W.3d 877, 886 (Tex.App.-El Paso 2005, pet. denied). Specific jurisdiction exists where the cause of action "arises from or is related to an activity conducted within the forum." *BMC Software,* 83 S.W.3d at 796. The focus is on the "relationship among the defendant, the forum and the litigation." *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 228 (Tex.1991). General jurisdiction exists where the "defendant's contacts in a forum are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state." *BMC Software,* 83 S.W.3d at 796. The focus is on "a showing of substantial activities in the forum state." *Guardian,* 815 S.W.2d at 228.

Barnhill asserts five separate issues all challenging personal jurisdiction. These five issues can be read collectively as a challenge to the denial of Barnhill's special appearance. In order to more efficiently analyze the issue of jurisdiction, we will address the issues accordingly.

## SPECIFIC JURISDICTION

Although the record is not entirely clear, it appears that the Williamses and ASC assert specific jurisdiction over Barnhill. Thus, two requirements must be met: (1) Barnhill's contacts "must be purposeful;" and (2) the "cause of action must arise from or relate to those contacts." *Am. Type Culture Collection v. Coleman*, 83 S.W.3d 801, 806 (Tex.2002); *Schexnayder v. Daniels*, 187 S.W.3d 238, 243 (Tex.App.-Texarkana 2006, pet. dism'd w.o.j.).

### Barnhill's Contacts

Barnhill contends that he resides in Georgia, has no property in Texas, and has not visited Texas in ten years. Williams initiated contact with Barnhill and visited Barnhill in Georgia, where the closing eventually occurred. Prior to Williams's initial communication, Barnhill had virtually no contacts with Texas. Arguing that his contacts with Texas were not purposeful, Barnhill heavily relies on *Michiana*. However, *Michiana* is factually distinguishable.

In *Michiana*, Holten, a Texas resident, phoned Michiana in Indiana to order an RV. *See Michiana*, 168 S.W.3d at 781. A dispute arose and Holten sued Michiana in Texas, alleging that Michiana made misrepresentations during Holten's phone call. *See id.* at 781, 788. Michiana was not registered to do business in Texas, did not conduct business in Texas, and had no contacts with Texas until Holten initiated contact. *See id.* at 784. Michiana's only contact with Texas was "Holten's decision to place his order from there;" thus, there was no conduct purposefully establishing minimum contacts for the exercise of specific jurisdiction. *Id.* at 794.

Unlike *Michiana*, however, the record demonstrates Barnhill's purposeful availment. Barnhill entered a contract with a company incorporated in Texas, headquartered in Texas, and involving Texas residents. Contracting with an "out-of-state party," exchanging information, or communicating with a Texas corporation while performing a contract do not alone support jurisdiction, but are factors to consider. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985); *Kelly Inv., Inc. v. Basic Capital Mgmt., Inc.*, 85 S.W.3d 371, 375 (Tex.App.Dallas 2002, no pet.). Furthermore, "the Court long ago rejected the notion that personal jurisdiction might turn on 'mechanical' tests, or on 'conceptualistic ... theories of the place of contracting or of performance.'" *Burger King*, 471 U.S. at 478, 105 S.Ct. at 2185 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95 (1945); *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316, 63 S.Ct. 602, 604, 87 L.Ed. 777 (1943)) (internal citations omitted). "Prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" are the appropriate factors. *Burger King*, 471 U.S. at 479, 105 S.Ct. at 2185.

Via telephone and/or email, Barnhill participated in communications, negotiations and subsequent business dealings with Texas residents, including Williams, Braswell, and Texas attorneys, accountants, and shareholders. He exchanged contract drafts with Texas residents, expressing suggested changes and explaining their rationale. He contracted to sell the assets of the Barnhill Group to DWCI, a Texas corporation. He contracted, in his individual capacity, to become an employee

of DWCI and to receive half of DWCI stock. By virtue of owning shares of stock in a Texas corporation, Barnhill maintains personal property in Texas. *See Brosseau v. Ranzau,* 81 S.W.3d 381, 387 (Tex.App.-Beaumont 2002, pet. denied). Barnhill also received $25,000 per month in compensation, various benefits, and the promise of increased salaries. He received reimbursement for monthly expenses upon the "submission of expenses" and "supporting documentation" to his employer located in Texas. In summary, Barnhill participated in founding a Texas corporation in which he owns stock, serves as "Chairman & CEO," performs services and reaps substantial benefits.

■ Moreover, the contract contemplates a long-term relationship with Texas and lists a Texas address for DWCI. The contract also contains a choice of law provision:

> *Governing Law*—THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS AND IS PERFORMABLE IN DALLAS COUNTY, TEXAS.

Such a clause "standing alone would be insufficient to confer jurisdiction," but is a factor to consider when determining whether a defendant " 'purposefully invoked the benefits and protections of a State's laws.' " *Burger King,* 471 U.S. at 482, 105 S.Ct. at 2187.

■ Based on a provision that his "principal office shall be located in Savannah, Georgia," Barnhill contends that "negotiating and signing a contract in Texas is insufficient if performance takes place elsewhere." *Moni Pulo, Ltd. v. Trutec Oil & Gas, Inc.,* 130 S.W.3d 170, 175 (Tex.

App.-Houston [14th Dist.] 2003, pet. denied). First, *Moni Pulo* addressed general jurisdiction, not specific. *See id.* The "minimum contacts inquiry is broader and more demanding when general jurisdiction is alleged, requiring a showing of *substantial activities* in the forum state." *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990) (emphasis added).

Second, such " 'mechanical' tests," or " 'conceptualistic ... theories' " are not determinative. *Burger King,* 471 U.S. at 478, 105 S.Ct. at 2185. Third, we do not agree that Barnhill performed the entire substance of the contract outside Texas. Barnhill knew he was "affiliating himself" with a Texas corporation. *Id.* at 480, 105 S.Ct. at 2186. His office may be located outside Texas, but he regularly communicated with other corporate officers, shareholders, and accountants located in Texas. He was also required to submit expenses to the corporation for reimbursement. Again, the contract contemplated a long-term relationship with Texas, not a situation where Barnhill was forever isolated from performing any portion of the contract in Texas. In light of Barnhill's relationship with Texas, the choice of law provision "reinforce[s] his deliberate affiliation with the forum." *Id.* at 482, 105 S.Ct. at 2187.

Barnhill also communicated with Texas shareholders. He relies on *D.H. Blair Inv. Banking Corp. v. Reardon,* contending that a letter he sent to shareholders was not purposeful.[1] In *D.H. Blair,* appellees alleged jurisdiction on the basis that D.H. Blair knew its actions "would have effects within Texas." 97 S.W.3d 269, 275 (Tex.App.Houston [14th Dist.] 2002, pet. dism'd w.o.j.). The Houston Court found:

---

1. Barnhill "does not dispute that that he had knowledge that some shareholders of HDC reside in Texas ..."

D.H. Blair was not involved in any way with soliciting and selecting LightPath's investors. *Nothing suggests that D.H. Blair's conduct was in any way directed toward* Texas shareholders as distinguished from LightPath's shareholders in general. Thus, whether or not D.H. Blair knew many LightPath investors resided in Texas, its only contact with the state of Texas was the fortuitous result of LightPath's conduct in soliciting those investors. It is well-settled that a defendant cannot be haled into a Texas court based on the unilateral activity of a third party. We cannot say D.H. Blair's mere knowledge that its actions would have effects in Texas equates to purposefully availing itself of the privileges and benefits of conducting business in Texas. Accordingly, we conclude D.H. Blair has negated appellees' allegation supporting specific jurisdiction.

*Id.* (emphasis added) (internal citations omitted). However, "none of D.H. Blair's alleged activities occurred in Texas," and D.H. Blair's "mere knowledge that its actions would have effects in Texas" was the only basis for jurisdiction. *Tempest Broad. Corp. v. Imlay,* 150 S.W.3d 861, 876 (Tex.App.-Houston [14th Dist.] 2004, no pet.).[2] Here, in addition to the shareholder letter, the record contains other acts supporting purposeful availment. Whether Barnhill knew his actions "would have effects in Texas" is neither the sole basis for jurisdiction nor is it relevant. *Id.* We do not consider whether a nonresident defendant " 'directed a tort' toward a Texas party, or knew 'that the brunt of the injury would be felt by a particular resident' in Texas." *Lewis,* 175 S.W.3d at 917; *Michiana,* 168 S.W.3d at 788–92.

Finally, Barnhill reviewed SEC filings, communicating with a Texas accounting firm in the process. Barnhill relies on *Rittenmeyer v. Grauer* to support his position that his review of SEC filings was not purposeful. However, *Rittenmeyer* is factually distinguishable. In *Rittenmeyer,* Grauer was an officer of AmeriServe, a Delaware corporation headquartered in Texas. *See Rittenmeyer v. Grauer,* 104 S.W.3d 725, 728 (Tex.App.-Dallas 2003, no pet.). When AmeriServe filed for bankruptcy, Rittenmeyer was appointed plan administrator and filed suit against the corporate officers in Texas. *See id.* The Dallas Court held that "a nonresident director of a foreign corporation is not subject to personal jurisdiction solely because the corporation has its *headquarters* in Texas," noting that *Pittsburgh Terminal* "held the fact that the corporation was *incorporated* in West Virginia, and thus controlled by West Virginia law, made the actions of the directors subject to West Virginia law." *Id.* at 728, 732 (emphasis added); *Pittsburgh Terminal Corp. v. Mid Allegheny Corp.,* 831 F.2d 522, 527 (4th Cir.1987). Finding no specific jurisdiction and quoting *Pittsburgh Terminal,* the Dallas Court stated:

Excellent reasons exist for allowing a State to assert jurisdiction over nonresident directors of domestic corporations. A chartering State has a strong, even compelling interest in providing a forum for redressing harm done by corporate fiduciaries, harm endured principally by a resident of that State, the corporation.... Given the high degree of regulation over corporate fiduciaries, the State's interest in providing a convenient forum for a derivative suit charg-

---

**2.** Although *Imlay* distinguished *D.H. Blair* in the course of a fair play and substantial justice reasoning, the same reasoning applies to minimum contacts. *See Tempest Broad. Corp. v. Imlay,* 150 S.W.3d 861, 876 (Tex.App.-Houston [14th Dist.] 2004, no pet.).

ing misfeasance or nonfeasance of a director cannot be overemphasized.

*Rittenmeyer,* 104 S.W.3d at 732; *Pittsburgh Terminal,* 831 F.2d at 528. Applying *Pittsburgh Terminal,* the Court found that "appellees were deemed to have been transacting business in Delaware, the state of incorporation, and not Texas, by voting for the merger." *Rittenmeyer,* 104 S.W.3d at 732. Unlike in *Rittenmeyer,* Barnhill is a nonresident officer of a corporation *incorporated* in Texas, not merely headquartered in Texas. *See id.* at 732. As a nonresident officer of a "domestic corporation," Barnhill's review of SEC filings constitutes conducting business in Texas, the state of incorporation. *Id.*

Considering "prior negotiations, contemplated future consequences, the terms of the contract, and the parties' actual course of dealing," Barnhill's acts establish that he purposefully availed himself of all the benefits, advantages, and profits that Texas has to offer. *KMG Kanal–Muller–Gruppe Deutschland GmbH & Co. KG v. Davis,* 175 S.W.3d 379, 389 (Tex.App.-Houston [1st Dist.] 2005, no pet.); *see Lewis,* 175 S.W.3d at 918; *see also Kelly,* 85 S.W.3d at 376; *Burger King,* 471 U.S. at 479, 105 S.Ct. at 2185.

### Causes of Action

With respect to this second prong of the specific jurisdiction inquiry, Barnhill contends that specific jurisdiction "must be examined on a claim-by-claim basis." He cites no authority supporting this position. Nevertheless, because he presents an issue significantly impacting the specific jurisdiction analysis, we find it worthy of resolution.

In *Glattly v. CMS Viron Corp.,* the Houston Court addressed the issue, stating:

> We begin by noting that Glattly made his special appearance "to the entire proceeding," rather than asserting that specific claims were severable and making his special appearance only as to them. Neither did his personal-jurisdiction briefing below assert separate jurisdictional arguments for separate causes of action or argue that any cause of action against him was severable. Accordingly, if personal jurisdiction exists over Glattly with respect to any claim that Viron alleged, we will hold that the trial court properly denied his special appearance.

177 S.W.3d 438, 447–48 (Tex.App.-Houston [1st Dist.] 2005, no pet.) (internal citations omitted); *see Esse v. BP Am. Prod. Co.,* No. 01–04–00567–CV, 2006 Tex.App. Lexis 3813, at *21–22, 2006 WL 1227724, at *7-*9 (Tex.App.-Houston [1st Dist.] May 4, 2006, no pet.)(mem.op.).

However, in a recent opinion, the United States Court of Appeals for the Fifth Circuit determined that "a plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim." *Seiferth v. Helicopteros Atuneros, Inc.,* 472 F.3d 266, 274 (5th Cir.Miss., 2006). In *Seiferth,* the Court reasoned that:

> This result flows logically from the distinction between general and specific jurisdiction and is confirmed by the decisions of our sister circuits. If a defendant does not have enough contacts to justify the exercise of general jurisdiction, the Due Process Clause prohibits the exercise of jurisdiction over any claim that does not arise out of or result from the defendant's forum contacts.
>
> · · ·
>
> Permitting the legitimate exercise of specific jurisdiction over one claim to justify the exercise of specific jurisdiction over a different claim that does not arise out of or relate to the defendant's

forum contacts would violate the Due Process Clause.

*Seiferth,* at 274-275.

██ We agree with *Seiferth* that exercising jurisdiction over a nonresident defendant would violate the Due Process Clause where jurisdiction has been established as to only one of multiple causes of action asserted by the plaintiff. Accordingly, we hold that specific jurisdiction must be evaluated on a claim-by-claim basis. *See Seiferth,* at 274; *see also Plainscapital Bank v. Malina,* Civil Action No. 3:05–CV–0469–M, 2005 U.S. Dist. Lexis 33323, at *5, 2005 WL 3454017, at *1 (N.D.Tex. Dec. 14, 2005).

## Bill Williams's Fraudulent Inducement Claim

██ Williams claims that Barnhill misrepresented his credentials, intending that Williams rely on these representations in entering the contract. Williams alleges that Barnhill made these representations in his individual capacity and in a resume sent to Williams at his request.[3]

██ The fact that Williams requested Barnhill's resume is not dispositive. Williams's claims arise not only out Barnhill's resume transmission, but also out of the contract. Allegations of fraudulent inducement are grounded in contract and constitute a "dispute involving the parties' agreement."[4] *Clark v. Power Mktg. Direct, Inc.,* 192 S.W.3d 796, 799 (Tex.App.-

---

3. Barnhill signed the employment contract in his individual capacity.

4. As part of this argument, Barnhill contends that no privity exists between Williams and him for purposes of this claim. However, the Texas Supreme Court specifically considered whether "the intent-to-induce-reliance element of a fraud claim requires a direct relationship between the alleged fraudfeasor and a specific known person—commonly referred to in this context as 'privity'" and determined that such privity is not required. *Ernst &*

Houston [1st Dist.] 2006, no pet.); *see In re J.D. Edwards World Solutions Co.,* 87 S.W.3d 546, 551 (Tex.2002); *see also Haase v. Glazner,* 62 S.W.3d 795, 798 (Tex. 2001).

During contractual negotiations, Barnhill provided Williams with a document outlining his medical credentials and expertise. Williams's fraudulent inducement claim arises out of Barnhill's alleged misrepresentations made during these negotiations. Accordingly, Williams's claim arises from and is related to Barnhill's contacts. *See Schexnayder,* 187 S.W.3d at 243.

## Shirley Williams's Fraudulent Inducement Claim

██ Shirley Williams, acting on HDC's behalf, alleges that Barnhill misrepresented his credentials, intending to induce the shareholders into retaining stock in the corporation. Williams claims that Barnhill made these misrepresentations in his individual capacity and in a letter he mailed to shareholders in Texas and across the nation.

██ Barnhill relies on the fiduciary shield doctrine to negate jurisdiction as to this claim. Under this doctrine, a "corporate officer or employee" is shielded from jurisdiction where "all of the individual's contacts with Texas were on behalf of his employer." *Wright v. Sage Eng'g, Inc.,* 137 S.W.3d 238, 250 (Tex.App.-Houston

---

*Young, L.L.P. v. Pac. Mut. Life Ins. Co.,* 51 S.W.3d 573, 574, 580 (Tex.2001). Furthermore, fraud and fraudulent inducement share the same elements: (1) a material misrepresentation; (2) which was false; (3) which was known to be false when made or was made recklessly as a positive assertion without knowledge of its truth; (4) which was intended to be acted upon; (5) which was relied upon; and (6) which caused injury. *Fletcher v. Edwards,* 26 S.W.3d 66, 77 (Tex.App.-Waco 2000, pet. denied); *see Haase v. Glazner,* 62 S.W.3d 795, 798–99 (Tex.2001).

[1st Dist.] 2004, pet. denied). However, this doctrine applies to the exercise of general jurisdiction, not specific.[5] *See Brown v. Gen. Brick Sales Co.*, 39 S.W.3d 291, 300 (Tex.App.-Fort Worth 2001, no pet.).

Further, Barnhill is charged with making these representations in his individual capacity. "Corporate officers are not shielded from the exercise of specific jurisdiction for fraudulent or tortuous acts for which they may be liable." *Lewis*, 175 S.W.3d at 917. "A corporate agent can be held individually liable for fraudulent statements or knowing misrepresentations even when they are made in the capacity of a corporate representative." *Wright*, 137 S.W.3d at 250. By alleging that Barnhill made misrepresentations regarding his personal medical credentials, the pleadings establish a claim against Barnhill for which he may be individually liable. *See id.*

Finally, this claim arises out of Barnhill's contacts with Texas. In *Paul Gillrie Inst., Inc v. Universal Computer Consulting, Ltd.*, PGI disseminated a journal allegedly defaming UCS. *See* 183 S.W.3d 755, 757 (Tex.App.-Houston [1st Dist.] 2005, no pet.). PGI, a Florida corporation, prepared the journal in Florida and mailed the journal to subscribers across the nation, including "approximately fifty subscribers located in Texas," some of which were UCS customers. *Id.* at 758, 761. UCS, headquartered in Texas, filed suit against PGI, Paul Gillrie, and John Darmento in Texas. *See id.* at 758. Gillrie was a founder, director, and employee of PGI. *See id.* "The article was contained in a trade journal targeted at those involved in or related to the automobile industry, and all of the subscribers, including those located both inside and outside of Texas, could have been considered as potential customers or industry contacts." *Id.* at 761. The Houston Court stated that:

Here, appellants directed copies of their journal, which allegedly contained an article defaming a corporation with its headquarters and principal place of business in Texas, to fifty subscribers located in Texas, as well as to an unknown number of subscribers across the country.

*Id.* at 762. PGI was subject to specific jurisdiction. *See id.* at 765.

Gillrie and Darmento also filed special appearances wherein they claimed that "UCS's cause of action did not arise out of or relate to their Texas contacts." *Id.* at 763. UCS responded that "Gillrie and Darmento drafted and edited the articles contained in PGI's journal." *Id.*

Similarly, UCS is alleging that Gillrie and Darmento are primary participants in tortious conduct directed at it, and UCS is seeking to hold them individually liable for their role in

*Id.* Therefore, the Court found "a direct relationship between [the individual] appellants, their purposeful contacts with subscribers located in Texas, and UCS's claims arising out of alleged defamatory statements made in PGI's journal." *Id.* at 764.

*Paul Gillrie* is analogous to the present case. Like PGI, HDC sent the letter allegedly containing misrepresentations. This letter was mailed to shareholders across the nation, including those located in Texas. The letter was specifically targeted at those with an interest in HDC, regardless of geographic location. Like Gillrie and Darmento, Barnhill authored the letter and was sued in Texas for allegedly fraudulent conduct committed in his individual capacity.

---

**5.** The Texas Supreme Court has not expressly recognized this doctrine. *See Brown v. Gen.* *Brick Sales Co.*, 39 S.W.3d 291, 300 (Tex. App.-Fort Worth 2001, no pet.).

Although HDC sent the letter, Barnhill drafted the contents of that letter. Accordingly, like UCS, Williams alleges that Barnhill participated in tortious conduct and is individually liable for disseminating a document containing fraudulent statements mailed to nationally located HDC shareholders, several hundred of which are located in Texas. *See id.* at 763. An obvious relationship exists between Barnhill's purposeful contacts with Texas shareholders and Williams's claims arising out of misrepresentations contained in the letter. *See id.* at 764.

**Shirley Williams's SEC Claim**

Shirley Williams, again acting on HDC's behalf, charges Barnhill with fraud and breach of fiduciary duty by virtue of sending inaccurate filings to the SEC and the shareholders, exposing HDC to liability.[6] Williams claims this conduct was tortious, fraudulent and a breach of fiduciary duty. The third-party petition and the record indicate that this claim is asserted against Barnhill in both his corporate and individual capacity.[7]

While it is true that Barnhill reviewed these filings in his corporate capacity, it is equally true that Barnhill allegedly made misrepresentations and failed to disclose material information. Barnhill is individually "liable for his own torts." *Ennis v. Loiseau,* 164 S.W.3d 698, 707 (Tex.App.-Austin 2005, no pet.).

> One's "status as an employee does not somehow insulate [him] from jurisdiction" and "there is no blanket protection from jurisdiction simply because a defendant's alleged acts were done in a

corporate capacity." A corporate officer may not escape liability where he had direct, personal participation in the wrongdoing, as to be the " 'guiding spirit' behind the wrongful conduct" or the " 'central figure' in the challenged corporate activity." Hence, "it is the general rule in Texas that corporate agents are individually liable for fraudulent or tortious acts committed while in the service of their corporation."

*Id* at 707–08 (internal citations omitted). Williams alleges that Barnhill committed fraudulent and tortuous acts by falsifying SEC filings, exposing HDC to liability and harm. As such, he directly participated in the alleged wrongdoing, involving a Texas corporation, for which he may be held individually liable. *See id.* at 708; *see also Wright,* 137 S.W.3d at 250–51; *Rittenmeyer,* 104 S.W.3d at 732. Therefore, Williams's claim arises out of Barnhill's acts.

Accordingly, because Barnhill's contacts with Texas were purposeful and because the causes of action asserted arise out of those contacts, specific jurisdiction is established. Because we so hold, we need not conduct a general jurisdiction analysis. *See* Tex.R.App. P. 47.1.

**Fair Play and Substantial Justice**

Whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice requires us to consider the: (1) burden on the defendant; (2) "interests of the forum state in adjudicating the dispute;" (3) "plaintiff's interest in obtaining convenient

---

6. DWC alleges fraudulent inducement of the contract and, along with the remaining intervenors, alleges that Barnhill made misrepresentations that fraudulently induced the shareholders to retain corporate stock.

7. We are not limited to the jurisdictional allegations contained in the petition, but may

consider other evidence contained in the record, including the response to special appearance and arguments presented at the hearing. *See Stein v. Deason,* 165 S.W.3d 406, 412 (Tex.App.-Dallas 2005, no pet.); *see also I & JC Corp. v. Helen of Troy L.P.,* 164 S.W.3d 877, 883 (Tex.App.-El Paso 2005, pet. denied).

and effective relief;" (4) the "interstate judicial system's interest in obtaining the most efficient resolution of controversies;" and (5) "shared interest of the several States in furthering fundamental substantive social policies." *Guardian,* 815 S.W.2d at 228. In few cases "will the exercise of jurisdiction not comport with fair play and substantial justice" when the defendant "purposefully established minimum contacts with the forum state." *Id.*

▮▮▮▮▮ According to the court's conclusions of law, exercising jurisdiction over Barnhill "does not offend traditional notions of fair play and substantial justice." Barnhill responds that he would be burdened by having to defend suit in Texas. However, "distance from the forum is generally not sufficient to defeat jurisdiction because the availability of 'modern transportation and communication have made it less burdensome for a party sued to defend himself in a state where he engages in economic activity.'" *Paul Gillrie,* 183 S.W.3d at 764. "Unwelcome travel and expense" are not determinative. *Id.* "Litigation away from home creates hardship for a defendant," but "there is no legal requirement that this hardship must be borne instead by the plaintiff whenever the defendant is not found in the state of the plaintiff's residence." *Wright,* 137 S.W.3d at 253–54. Given the "quality, nature and extent" of Barnhill's activities within Texas, he should expect to be "called into the courts of Texas." *Lewis,* 175 S.W.3d at 919.

Furthermore, Texas maintains an interest in "adjudicating the claims of Texas residents" and is "a convenient forum for the litigants." *Id.* In fact, Texas has a "compelling interest" in cases involving harm done by "corporate fiduciaries" to Texas corporations. *Rittenmeyer,* 104 S.W.3d at 732; Pittsburgh Terminal, 831 F.2d at 528.

"Litigation in Texas will provide both parties, not just appellees, the benefits and protections of our laws." *Lewis,* 175 S.W.3d at 919. Litigation in Texas will also serve the interests of the "interstate judicial system." *Id.* Parties, potential witnesses and documents may exist in Texas. *See Paul Gillrie,* 183 S.W.3d at 764. The "shared interest of other states in furthering fundamental substantive social policies, can be implemented by Texas courts as effectively" as those in Georgia. *Lewis,* 175 S.W.3d at 919. Accordingly, the exercise of Texas jurisdiction over Barnhill does not offend traditional notions of fair play and substantial justice.

Because we find that the court properly denied Barnhill's special appearance, we overrule each of his five issues. The court's judgment is affirmed.

Chief Justice GRAY concurring.

TOM GRAY, Chief Justice, concurring.

The problems with the majority opinion begin with the style and run to its conclusion. Amazingly, the problems do not result in an improper judgment.

### PARTIES TO THE APPEAL

A quick check of the docketing statement reflects that the appeal also includes Appellees Baptist Community Services, Tim Holloway, Gerald Esterling and the Guadalupe Family Trust. The failure to include these additional parties and to appreciate the impact of their omission will be discussed later.

### CLAIM-BY-CLAIM ANALYSIS

The most important holding of the majority opinion is obscured by the failure to construct the analysis and judgment on that holding. The holding is that a specific jurisdiction analysis must be performed on a claim-by-claim basis. The discussion related to this holding begins with the head-

ing of "Causes of Action" on page 10 of the opinion. Op. pg. 766. This holding necessarily applies to both prongs of the requirements for specific jurisdiction.

Unfortunately, this holding comes in the middle of the majority's efforts to conduct its specific jurisdiction analysis which began back on page 763 of the majority opinion. Thus, by conducting the first prong analysis before its determination that we must conduct a claim-by-claim analysis, the majority's analysis of the first prong lumps all the jurisdictional acts together purportedly "to more efficiently analyze the issue of jurisdiction." *Id.* Efficiency would be best served by identifying each claim and isolating the jurisdictional acts that relate to that claim. The majority's analysis fails to distinguish any jurisdictional act as relating to a specific claim.

So as a result of the structure of the majority opinion, instead of applying the holding to each claim, the holding is only applied to the second prong of the specific jurisdiction analysis. This is only evident after a careful analysis of the majority opinion. It is error. This error, in most circumstances, will have consequences.

The most obvious example in this appeal of the consequence of the majority's error that could have affected this appeal is the determination that, on the facts of this case, Texas has personal jurisdiction of Barnhill on the claim for fraudulent inducement brought by Mr. Williams. The only jurisdictional act of Barnhill was sending a resume, at Williams's request, into Texas.

Under the analysis laid out for us in *Michiana*, this is an inadequate act to meet the first prong of the specific jurisdiction test. *Michiana Easy Livin' Country Inc. v. Holten,* 168 S.W.3d 777, 794 (Tex.2005). Barnhill, by this act, did not seek to avail himself of any aspect of benefit or protection of Texas law. Rather, he was responding to an inquiry from a Texas resident who had sought him out in Georgia, much like Michiana's response to a Texas resident about the purchase of a motor home. *Id.*

And further, under the analysis laid out for us in *Moki Mac,* I have some grave reservations about whether the tort claim, fraudulent inducement, "arises out of" this single act of mailing the resume to Texas. *See Moki Mac River Expeditions v. Drugg,* No. 04–0432, 2007 Tex. LEXIS 188, 2007 WL 623805 (Tex. March 2, 2007). This is the only jurisdictional act "in Texas" related to this claim against Barnhill. I do not believe the exercise of personal jurisdiction over Barnhill could be constitutionally maintained in Texas based upon this single act. This is the type of analysis that should be done on each claim by each party against Barnhill, rather than lumping all the jurisdictional acts together, to evaluate both prongs of the specific jurisdiction analysis on a claim-by-claim basis.

Further, the majority's discussion also vacillates from the principles and characteristics for an analysis of specific jurisdiction to the principles and characteristics for general jurisdiction. In the course of this vacillation the analysis sometimes applies principles applicable to general jurisdiction to the specific jurisdiction analysis or erroneously conflates the elements of the two prong specific jurisdiction analysis.

### OMITTED PARTIES

The majority's failure to conduct a proper claim-by-claim analysis is highlighted in its failure to even identify all the parties to the appeal, and thus omits any analysis of personal jurisdiction over Barnhill on some of the claims pending against him. As noted above, the style of the appeal used by the majority does not properly identify all the parties to the appeal. When I made this observation, it became evident to me that the majority had failed to conduct the very analysis, claim-by-claim, that the ma-

jority is holding must be applied for a specific jurisdiction analysis. My examination of the pleadings to identify all of the parties and claims pending against Barnhill did, however, lead me to a startling discovery that should be where the majority opinion and this appeal stopped.

### SPECIAL APPEARANCE TO WHAT CLAIMS?

An integral intellectual aspect of a claim-by-claim analysis is that there must be a special appearance filed that actually challenges personal jurisdiction as to each claim made against the person who is asserting the absence of personal jurisdiction. As I scoured the record to identify each claim so that I could conduct, or review, a claim-by-claim analysis, I also pulled the special appearance filed by Barnhill. It was then that I discovered the only special appearance in the record before us was filed in response to the claims of Automated Shrimp Corporation against Barnhill. The pleading in which those claims were made was amended *prior to* the 120a hearing.[1] The live pleadings which assert claims against Barnhill include claims of persons and entities *other than* Automated Shrimp Corporation. Barnhill has not filed a special appearance in response to these claims. Because the only special appearance before us is to claims that have been abandoned by the failure to include them in the amended pleadings against Barnhill, the trial court could not have erred in the denial of the special appearance.

The fact that the claims of some parties against Barnhill are not even evaluated by the majority in its purported claim-by-claim analysis spot-lights why Barnhill's special appearance and the majority's analysis entirely miss the mark. Because a trial court's judgment can be *affirmed* on any basis finding support in the record, and because Barnhill has not challenged jurisdiction over him on any claim that is pending against him, the trial court could not have erred in denying the special appearance brought only against claims that are no longer pending against Barnhill. For this reason, the trial court's order overruling the special appearance of Barnhill made in response to the claims of Automated Shrimp Corporation should be affirmed.

---

1. Actually, this was the second hearing on the 120a motion. After the first hearing, the trial court granted the 120a special appearance. At that time, the claims filed by Automated Shrimp against Barnhill were still pending. After the pleadings were amended, the 120a issue was again presented to the trial court, at which time the trial court denied the 120a special appearance filed by Barnhill.