IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-09-00264-CV

 

Brian Bates, Individually, and 

Arizona International Credential 

Evaluators, LLC,

                                                                                       Appellants

 v.

 

Global Credential Evaluators, Inc.,

                                                                                       Appellee

 

 

 



From the 272nd District
Court

Brazos County, Texas

Trial Court No. 08-002216-CV-272

 



MEMORANDUM  Opinion



 








At
a conference in San Antonio, Texas, Jean Ringer, principal operating officer
for Global Credential Evaluators, Inc. (“GCE”), approached Brian Bates about
performing credentialing work for GCE.  Ringer operated the GCE office in
College Station, Texas.  GCE owner Marilyn Hesser was located in Virginia where
GCE was incorporated and headquartered.  Shortly after Bates signed an
agreement with GCE, Ringer acquired GCE, incorporating it in Texas and transferring
its headquarters to College Station.  Bates formed GCE West, LLC in Arizona.

A dispute eventually arose among the
parties.  They attended mediation in Austin, Texas and entered a settlement
agreement.  GCE later sued Bates and Arizona International Credential
Evaluators, LLC (“AZICE”), formerly GCE West, alleging several causes of
action, including breach of the settlement agreement.  Bates and AZICE filed a
special appearance.  After a hearing, the trial court denied the special
appearance and made the following conclusions of law:

The claims asserted by [GCE] arise from
the August 2002 joint venture agreement between the parties.

 

The State of Texas has an interest in
adjudicating disputes concerning agreements performable in Texas.

 

[Bates and AZICE] purposefully
established contacts with the State of Texas.

 

The exercise of personal jurisdiction
over [Bates and AZICE] in this suit will not offend traditional notions of fair
play and substantial justice and would not violate due process.

 

[Bates and AZICE] failed to meet their
burden to negate all bases of personal jurisdiction asserted. 

 

In one issue, Bates and AZICE challenge
the denial of their special appearance.  We affirm.

STANDARD OF REVIEW

A plaintiff must plead “sufficient
allegations” to bring a nonresident defendant within the long-arm statute.  BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 793 (Tex. 2002).  The plaintiff’s original pleadings as
well as its response to the defendant’s special appearance can be considered in
determining whether the plaintiff satisfied that burden.  Flanagan v. Royal Body Care, Inc., 232 S.W.3d 369, 374 (Tex. App.—Dallas
2007, pet. denied); see Tex. R.
Civ. P. 120a(3). 
The defendant must then negate “all
jurisdictional bases.”  BMC
Software, 83 S.W.3d at
793.  In considering the
denial of a special appearance, we determine only the issue of jurisdiction,
not liability.  See Michiana Easy Livin’ Country Inc. v. Holten,
168 S.W.3d 777, 791-92 (Tex. 2005).  We review a court’s findings of fact for legal and factual
sufficiency and its conclusions of law de novo.  See BMC Software, 83 S.W.3d at 794.

APPLICABLE LAW

Texas courts may assert in personam
jurisdiction over a nonresident if two requirements are met.  First, the “Texas
long-arm statute authorizes the exercise of jurisdiction.”  Moki Mac River Expeditions v. Drugg, 221 S.W.3d 569, 574 (Tex. 2007).  Under
the statute, a nonresident
does business in Texas if he: (1) contracts by mail or otherwise with
a Texas resident and either party is to perform the contract in whole or in
part in this state; (2) commits a tort in whole or in part in this state;
or (3) recruits Texas residents, directly or through an intermediary
located in this state, for employment inside or outside this state.  Tex.
Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon 2008).  Second, the exercise of jurisdiction must be “consistent
with federal and state constitutional due-process guarantees.”  Moki Mac, 221 S.W.3d at 574.  Exercise of personal jurisdiction over a
nonresident satisfies due process when: (1) the defendant has minimum contacts
with Texas; and (2) the exercise of jurisdiction comports with traditional
notions of fair play and substantial justice.  BMC Software, 83 S.W.3d at 795. 


Minimum contacts arise if the defendant “purposefully availed”
himself of the “privileges and benefits of conducting business in the foreign
jurisdiction.”  BMC
Software, 83 S.W.3d at
795.  Three issues are relevant to this
inquiry: (1) only the defendant’s contacts with the forum are relevant, not the
unilateral activity of another party or a third person; (2) the contacts relied
upon must be purposeful rather than random, fortuitous, or attenuated; and (3) the
“defendant must seek some benefit, advantage or profit by ‘availing’
itself of the jurisdiction.”  Moki
Mac, 221 S.W.3d at 575. 
 “[T]he minimum-contacts
analysis is focused on the quality and nature of the defendant’s contacts, rather
than their number.”  Retamco
Operating, Inc. v. Republic Drilling Co., 278 S.W.3d 333, 339 (Tex. 2009).

Minimum contacts must establish specific
or general jurisdiction.  See Barnhill
v. Automated Shrimp Corp.,
222 S.W.3d 756, 762 (Tex. App.—Waco 2007, no pet.).  Specific jurisdiction exists where the
cause of action “arises from or is related to an activity conducted within the
forum.”  BMC Software, 83 S.W.3d at 796.  The focus is on the
“relationship among the defendant, the forum and the litigation.”  Guardian
Royal Exch. Assur., Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223,
228 (Tex. 1991).  General jurisdiction exists where the “defendant’s contacts
in a forum are continuous and systematic so that the forum may exercise
personal jurisdiction over the defendant even if the cause of action did not
arise from or relate to activities conducted within the forum state.”  BMC Software, 83 S.W.3d at 796.  The focus is on “a showing of
substantial activities in the forum state.”  Guardian, 815 S.W.2d at
228.

ANALYSIS

In
one issue, Bates and AZICE argue that the trial court erred by denying their
special appearance because they are not subject to the jurisdiction of Texas
courts.

Specific
Jurisdiction

Two requirements must be met to
establish specific jurisdiction: (1) contacts “must be purposeful;” and (2) the
“cause of action must arise from or relate to those contacts.”  Am. Type Culture Collection v. Coleman, 83 S.W.3d 801, 806 (Tex. 2002); Barnhill,
222 S.W.3d at 763.  GCE alleged that Bates and AZICE: (1)
“purposefully availed themselves of the privileges and benefits of conducting
business in Texas by entering into a contract with a Texas resident;”[1]
and (2) “committed a tort, or series of torts, which are the subject of this
lawsuit, in whole or in part in Texas.”[2]  

Purposeful
Contacts

Bates
testified that he resides in Arizona and has never lived in Texas, registered
to vote in Texas, paid taxes in Texas, had an office in Texas, or
advertised/traveled outside Arizona to seek business.  He similarly testified
that neither AZICE nor GCE West has had such contacts with Texas.  Bates
testified that he had no ownership in GCE and did not serve as an officer,
director, owner, manager, or employee of GCE.       

After
the conference in San Antonio, Bates testified that he communicated with both
Ringer and Hesser for negotiation purposes.  He signed a “joint venture
agreement,” dated August 2002, with GCE, “a Virginia corporation.”  The
agreement identified Bates as a “contractor” and stated that Virginia law
governed.  Although the agreement terminated after one year, the parties’
business relationship continued.

In
her affidavit, Ringer stated that she incorporated GCE in Texas and moved its
headquarters to College Station in October 2002.  Bates testified that Ringer
represented that she was buying GCE from Hesser, but he never saw any documents
to this effect. Bates thought he was entering a business relationship with a
Virginia corporation.  However, Ringer stated that Bates knew of her intent to incorporate
GCE in Texas and knew that his primary relationship would be with the Texas
office.  She explained that they agreed that she would supervise Bates and
Bates would report to the Texas office.  

Bates
testified that Ringer was not involved in the formation of GCE West.  Bates
testified that neither Ringer nor GCE had an ownership interest in GCE West.  Ringer,
however, claimed that GCE West was formed as a result of the parties’
agreement.  He also created the GCE West website, which allowed applicants to
print documents to be completed and returned to him.  The website contained
contact information for both Bates and the Texas office.

            Bates
testified that he and Ringer were in constant communication via telephone and
daily emails.  He sent completed evaluations to GCE, communicated with other
Texas employees of GCE, and exchanged documents with GCE.  He initially deposited
funds into GCE’s Texas bank account and arranged to handle credit card payments
through the account.  When GCE West established a bank account in Arizona,
Bates deposited the funds into the account and then transferred funds to GCE’s Texas
account.  Bates testified that Ringer was a signatory on GCE West’s bank
account.

Ringer
stated that the Texas office maintained the master client list, requiring other
offices, including Arizona, to submit names, reference numbers, and payment
amounts to the Texas office on a monthly basis.  Bates testified that he visited
Texas on one occasion to meet with Ringer and others to prepare GCE’s membership
application for the National Association of Credential Evaluations Services.

Bates
explained that the purpose of the credentialing business is to:

[E]stablish some
guidelines so that we can determine if a degree from another institution in
another country is essentially the same as something that would be familiar to
an admissions officer or an employer or to an immigration law judge working in
the United States.

 

Ringer
stated that Bates prepared evaluations for several Texas clients, including USA
Employment, West African Management Services, University of Phoenix in Texas,
and DeVry University in Texas.  Bates testified that GCE West performed about
6,000 evaluations.  He performed about 100 evaluations over the years for USA
Employment and 25 for West African, but testified that he was contacted by these
companies and even met with someone from USA Employment in Arizona on three
occasions.

Bates
testified that less than 10% of clients lived in Texas or wanted to work/attend
school in Texas and 12.6% of all evaluations were from Texas or Virginia.  He
testified that business generated in Texas declined over the years.  In 2003,
59% of evaluations came from Texas and Virginia, half of which came from
Texas.  In 2004, the amount decreased to 26%.  The amounts dropped to virtually
nothing in 2005.  In 2006, Bates performed seven evaluations and in 2007, only
one evaluation.  Ringer stated that “Texas-based applicants make up a
significant portion of [Bates’s] clientele” and that Bates “actively solicited
the business of Texas-based entities.”  She explained that GCE, including the
Arizona office, has entered 19,639 applications, 36.55% from Texas.  Ringer
stated that Bates represented GCE at a conference in Colorado, at which his
duties included the “solicitation of representatives of Texas-based entities.”

Bates
was also compensated for his services.  Bates testified that he received 50% of
the client fee and 50% of any rush fees for evaluations from the Texas or
Virginia offices.  If he generated the business himself, he received 80% of the
fee.  

The
final contacts Bates had with Texas include attending mediation and entering a
settlement agreement with GCE.  According to the petition, the agreement
required that Bates and AZICE pay settlement funds to GCE, redirect telephone
calls to GCE, assign the website and email address to GCE, return files and
supplies to GCE, and forward mail, faxes, and applications to GCE in Texas.

Bates
and AZICE argue that merely entering a settlement agreement does not establish minimum
contacts. 
However, “a nonresident may purposefully avoid a particular jurisdiction by
structuring its transactions
so as to neither profit from the forum’s laws nor be subject to its jurisdiction.”  Retamco, 278
S.W.3d at 340 (quoting Michiana, 168 S.W.3d at 785.).  Bates
testified that the agreement did not contain a clause providing that personal jurisdiction
had not been waived.

Moreover,
attending mediation and entering a mediated settlement agreement are not Bates’s
and AZICE’s only contacts with Texas.  “In order to determine whether
litigation results from injuries that arise out of or relate to activities a
defendant has purposefully directed to another state, all of the activities
the defendant has so directed to that state must obviously be taken into
consideration.”  P.V.F.,
Inc. v. Pro Metals, 60 S.W.3d 320, 326 (Tex. App.—Houston [14th
Dist] 2001, pet. denied) (emphasis added); see Intercarga, S.A. v. Fritz
Cos., No. 14-02-00297-CV, 2003 Tex. App. LEXIS 5119, at
*18 (Tex. App.—Houston [14th Dist] June 19, 2003, no pet.) (mem. op.).

In
doing so, we find that Bates’s and AZICE’s contacts with Texas exceed
merely entering a contract with a Texas resident.  Although GCE was
incorporated in Virginia at the time, the record contains evidence showing that
Bates signed the agreement knowing he was affiliating himself with a Texas business
and Texas residents, with whom he would regularly communicate and conduct
business.[3] 
See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 479, 105 S. Ct.
2174, 2185, 85 L. Ed. 2d 528 (1985) (“Prior negotiations and
contemplated future consequences, along with the terms of the contract and the
parties’ actual course of dealing” are appropriate factors.); see also Barnhill, 222
S.W.3d at 764.  Bates’s and AZICE’s “ongoing communications” with GCE are not
merely “incidental,” as he claims.  Rather, contracting with an “out-of-state
party,” exchanging information, or communicating with a Texas corporation while
performing a contract are factors to consider.  Burger King, 471 U.S. at 479, 105 S. Ct. at
2185.

Additionally,
that Bates and AZICE were located in Arizona is a “mechanical” or “conceptualistic”
theory on which personal jurisdiction does not turn.  Burger King, 471 U.S.at 478, 105 S. Ct. at
2185; Barnhill, 222 S.W.3d at 764.  The
record shows that a significant amount of the work Bates performed was
generated in Texas and affected Texas residents.  During his testimony, Bates
admitted that he profited from the work, collected fees from Texas residents, regularly
communicated with Texas residents, and did business with GCE, a Texas corporation,
for over four years.  See Burger King, 471 U.S. at 478, 105 S. Ct. at
2185; see also Barnhill, 222
S.W.3d at 763.

Considering
“prior negotiations, contemplated future consequences, the terms of the
contract[s], and the parties’ actual course of dealing,” Bates’s and AZICE’s
acts establish that they purposefully availed themselves of all the benefits,
advantages, and profits that Texas has to offer.  Barnhill, 222
S.W.3d at 766 (quoting KMG Kanal-Muller-Gruppe
Deutschland GMBH & Co. KG v. Davis, 175 S.W.3d 379, 389 (Tex. App.—Houston [1st Dist.]
2005, no pet.)); see Burger King, 471 U.S. at 479, 105 S. Ct. at
2185.

Causes
of Action

“A plaintiff bringing multiple claims
that arise out of different forum contacts of the defendant must establish specific
jurisdiction for each claim.”  Seiferth v. Helicopteros Atuneros,
Inc., 472 F.3d
266, 274 (5th Cir. 2006); see Barnhill, 222 S.W.3d at 767.  A plaintiff need not “establish
jurisdiction for each claim to cases where all claims arise from the same
contacts.”  Sutton v.
Advanced Aquaculture Sys.,
621 F. Supp. 2d 435, 442 (W.D. Tex. 2007). 
“[J]urisdiction is properly asserted over claims when the contacts
meet the minimum contact standard.”  Id.

GCE
alleged misappropriation of trade secrets, unfair competition, breach of
fiduciary duty and the duty of loyalty, violations of the Theft Liability Act,
tortious interference, breach of the mediated settlement agreement, breach of
contract, promissory estoppel, and conspiracy.  These claims are based on the alleged misappropriation, theft, use,
and/or disclosure of GCE’s “trade secrets and confidential, proprietary and
business-sensitive information,” theft of fees, and interference in the
prospective business relationships of GCE.

As a result of their relationship with
Texas-based GCE, Bates and AZICE would have collected fees, gained confidential
information, and had the ability to use information.  See Johnson v. Schlotzsky’s, Inc., No.
03-03-00468-CV, 2003 Tex.
App. LEXIS 10566, at *13-14 (Tex. App.—Austin Dec. 18, 2003, no pet.)
(mem. op.).  It would have been foreseeable that a misuse of GCE’s confidential
information or a deprivation of fees to which GCE was entitled, would
negatively affect GCE in Texas.  See Glattly v. CMS Viron Corp., 177
S.W.3d 438, 449 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Bates’s and AZICE’s liability, if any,
is directly related to their business relationship with a Texas business
involving Texas residents and servicing Texas clients.  These business contacts
led to the parties’ dispute and, ultimately, the settlement agreement.  Thus, we
conclude that GCE’s claims arise out of Bates’s and AZICE’s business contacts
with Texas.  See Retamco, 278 S.W.3d at 340-41; see also  Deloitte & Touche Netherlands
Antilles & Aruba v. Ulrich,
172 S.W.3d 255, 264 (Tex. App.—Beaumont 2005, pet. denied); Conwill v. Greenberg Traurig, L.L.P., No.
09-4365 SECTION I, 2009
U.S. Dist. LEXIS 119214, at *21-22 (E.D. La. Dec. 22, 2009).

Fair Play and Substantial Justice

            Whether the exercise of
jurisdiction comports with traditional notions of fair play and substantial
justice requires us to consider the: (1) burden on the defendant; (2) “interests
of the forum state in adjudicating the dispute;” (3) “plaintiff’s interest in
obtaining convenient  and effective relief;” (4) the “interstate judicial
system’s interest in obtaining the most efficient resolution of controversies;”
and (5) “shared interest of the several States in furthering fundamental
substantive social policies.”  Guardian, 815 S.W.2d at 228. 
In few cases “will the exercise of jurisdiction not comport with fair play and
substantial justice” when the defendant “purposefully established minimum
contacts with the forum state.”  Id.

Bates and AZICE argue that subjection to
the jurisdiction of Texas courts violates traditional notions of fair play and
substantial justice because individuals will be discouraged from mediating in
Texas and because they would not anticipate that voluntarily participating in
mediation would subject them to jurisdiction.  As previously discussed, the
mediation and subsequent settlement are not their only contacts with Texas. 
Moreover, Texas maintains
an interest in “adjudicating the claims of Texas residents” and is “a
convenient forum for the litigants.”  Lewis
v. Indian Springs Land Corp.,
175 S.W.3d 906, 919 (Tex. App.—Dallas 2005, no pet.).  Not only GCE, but
also Bates and AZICE, will receive the
“benefits and protections of our laws.”  Id.

            Additionally, “modern transportation and
communication have made it much less burdensome for a party sued to defend
himself in a State where he engages in economic activity.”  Guardian Royal, 815
S.W.2d at 231.  While “litigation
away from home creates hardship for a defendant…there is no legal
requirement that this hardship must be borne instead by the plaintiff whenever
the defendant is not found in the state of the plaintiff’s residence.”  Wright v. Sage Eng’g, Inc., 137 S.W.3d 238, 253-54 (Tex.
App.—Houston [1st Dist.] 2004, pet. denied).

Finally, litigation in Texas will also
serve the interests of the “interstate judicial system.”  Lewis, 175 S.W.3d at 919.  Parties, potential witnesses and documents may exist in
Texas.  See id.  The “shared interest of other states in
furthering fundamental substantive social policies, can be implemented by Texas
courts as effectively” as those in Arizona.  Id.  We cannot say
that the exercise of Texas jurisdiction over Bates and AZICE offends
traditional notions of fair play and substantial justice.

CONCLUSION

Because we find that the court properly
denied Bates’s and AZICE’s special appearance, we overrule their sole
issue and affirm the trial court’s judgment.

  

FELIPE REYNA

Justice

Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

(Chief
Justice Gray concurring with note)*

Affirmed 

Opinion
delivered and filed May 5, 2010 

[CV06]

*           (Chief
Justice Gray concurs in the Court’s judgment affirming the order of the trial
court.  A separate opinion will not issue.)

 









[1]               In its petition, GCE
alleged jurisdiction based on the mediated settlement agreement.  In its response
to the special appearance, GCE alleged additional jurisdictional facts,
including the contractual business relationship.  We look at both to determine
whether personal jurisdiction exists.  See
Flanagan v. Royal Body Care, Inc.,
232 S.W.3d 369, 374 (Tex. App.—Dallas 2007, pet. denied); see also Tex. R.
Civ. P. 120a(3).

    





[2]
              On appeal, Bates and AZICE challenge the
sufficiency of GCE’s pleadings as to this allegation.  However, this argument
was not presented to the trial court.  See Tex. R. App. P. 33.1.





[3]               Bates and AZICE raise a
question as to whether the parties actually entered into a joint venture.  “Whether
the joint venture agreement in fact creates a joint venture goes to the question of
liability for the alleged breach, and not to the question of jurisdiction.”  Zac Smith & Co. v. Otis
Elevator Co., 734 S.W.2d 662, 666 (Tex. 1987).