Affirmed in Part and Reversed and Remanded in Part and Memorandum
Opinion filed February 26, 2009








Affirmed in
Part and Reversed and Remanded in Part and Memorandum Opinion filed February 26, 2009.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00222-CV

____________

 

DAVIS INVESTMENTS, VI, LP, Appellant

  
V.

CHARLES A. HOLTGRAVES, LARRY J. HORBACH, and PHILLIP
J. HOLTGRAVES, Appellees

 

ADVANCED ENERGY RECOVERY, INC., ALLEN DRILLING
ACQUISITION COMPANY, and ALLEN DRILLING ACQUISITION COMPANY II, Appellants

V.

CHRISTOPHER D. DAVIS, Appellee

 



 

On Appeal from the 152nd
District Court

Harris County, Texas

Trial Court Cause No. 2007-10446

 



 

M E M O R A N D U M   O P I N I O N








In this interlocutory appeal and cross-appeal, we review
two orders sustaining special appearances filed by the president of a Missouri
limited partnership and three corporate officers of out-of-state corporations
in underlying litigation between the corporate entities pertaining to
development of an oil and gas lease in Texas.  We affirm the trial court=s order dismissing
for lack of jurisdiction the claims against the nonresident corporate officers
and reverse the trial court=s order as to the Missouri-based
president.

I.  Factual and Procedural
Background

A.  The Parties

Christopher Davis is a Kansas resident and the president of
Davis Investments, VI, LP, (hereinafter referred to as ADavis VI@), a Missouri
limited partnership.  Davis VI is a shareholder and investor in two
corporations, Advanced Energy Resources, Inc. (AAdvanced Energy@) and Allen
Drilling Acquisition Company (AAllen@), and Christopher
Davis serves on the board of directors for these two entities. 

Advanced Energy is a Delaware corporation with headquarters
in Kansas and is a parent company of Allen and Allen Drilling Acquisition Company
II (AAllen II@).  Allen is a
Nebraska corporation with headquarters in Kansas.  Allen II is a Delaware
corporation with headquarters in Kansas.  Both Allen and Allen II are foreign
corporations registered to conduct business in Texas.  Larry J. Horbach,
Phillip J. Holtgraves, and Charles A. Holtgraves are officers and directors of
Allen and Advanced Energy.  Horbach is a Nebraska resident, and Phillip
Holtgraves and Charles Holtgraves are residents of Kansas.

Allen formed a jointly owned Texas limited liability
company with Crimson Exploration, Inc.[1]
(ACrimson@), a Delaware
corporation, whose headquarters is in Houston, Texas.  Allen and Crimson formed
this limited liability company, Elgin Holdings, LLC (AElgin@), to develop oil
and gas leases in Madison County and Hardin County, Texas (hereinafter referred
to as the AMadisonville Project@). 

 








B.  The Claims

Davis VI sued Advanced Energy, Allen, Crimson, and Allen
II, and the three corporate officers, Larry Horbach, Phillip Holtgraves, and
Charles Holtgraves, individually, asserting a number of claims pertaining to
lease transfers and funding of the Madisonville Project.  Davis VI alleged the
following in its live petition in the trial court: 

$                  
Larry Horbach,
Charles Holtgraves, and Philip Holtgraves are nonresidents of Texas, each of
whom has engaged in business in Texas.  The actions and conduct of each
involved a project conducted in Texas and were directed at the State of Texas.

$                  
Pursuant to a
joint operating agreement in forming Elgin, Allen owned 52.5% and Crimson owned
the remaining 47.5%.  Charles Holtgraves, Phillip Holtgraves, and Larry Horbach
are all officers and directors of Allen and Allen II.  Larry Horbach and
Charles Holtgraves are managers and/or directors of Elgin.

$                  
Christopher
Davis is the President of Davis VI, which is a preferred shareholder and
investor of Allen and Advanced Energy.  Larry Horbach and Charles Holtgraves
recruited Davis VI, through Davis, to invest in the Madisonville Project.  

$                  
ASpecifically, Defendants informed
Mr. Davis, and thus [Davis VI], that Crimson was to convey all of its other
leases and leasehold interests it had acquired in or around Madisonville,
Texas, free of any liens and/or encumbrances, to the Elgin entity.  The understanding
between the parties was that if [Davis VI] invested money into the venture,
then the funds could be used to develop the leases.@

$                  
Allen sent a
memo, via Charles Holtgraves, indicating that Crimson had completed its
assignments of leases to Elgin.  ASpecifically, Charles A. Holtgraves sent a memo to Chris
Davis on this transfer and instructed [Davis VI] to send or wire the funds for
investment into [Allen].@  Christopher Davis was to receive
a 40% ownership interest in Allen=s preferred stock. Davis VI=s money was to be used to acquire Allen=s ownership interest in Elgin.








$                  
AChris Davis, and thus [Davis VI],
relied on the representations by the Defendants, especially with respect to the
conveyance of leases, to make the investment contribution they were
requesting.  At this time, [Allen], [Allen II], Charles A. Holtgraves, Larry J.
Horbach, and Phillip J. Holtgraves, also agreed to give investors like Davis
certain rights to restriction on voting and sale of assets.  However, no leases
were ever conveyed by Crimson to Elgin and the representations by the
Defendants were purposefully false.@

$                  
Crimson issued
a memo that proposed to restructure ownership of Elgin.  Elgin=s assets would be conveyed back to
Allen in the form of 22.5% ownership interest in the Madisonville Leases. 
Crimson would retain a 77.5% interest in the leaseholds.  Because the leases
were never conveyed to Elgin by Crimson, the proposed ownership interests were
erroneous and the defendants were aware or should have been aware of this
fact.  AMore importantly, Charles A.
Holtgraves, Larry J. Horbach, and Phillip J. Holtgraves had been fraudulently
representing to [Davis VI] that Crimson was in compliance and that the leases
had been transferred into Elgin free and clear of any liens or encumbrances.@

$                  
A vote on the
proposed shift was to occur at a later time, but did not occur.  Elgin,
Crimson, and Allen, through Larry Horbach, Charles Holtgraves, and Phillip
Holtgraves, informed Davis VI that they had executed an AOverall Agreement@ along with an AAssignment of Overriding Royalty
Interest@ from Crimson.

$                  
No conveyance
documents were recorded and Davis received unsigned copies of the documents. 
Some documents eventually were recorded when Davis VI, through an attorney,
brought it to the defendants= attention.

$                  
ADefendants attempted to explain the
. . . >Overall Agreement= by proclaiming the break up was
necessary since no financing could be obtained by Allen to meet other areas of
the project, such as drilling.  Yet, Defendants failed to provide Chris Davis
with specific evidence in support of this excuse.@

$                  
Davis sent a
letter outlining its grievances and objections to the proposed transaction and Apoor disinformation@ distributed by ADefendants, [Allen], Larry,
Phillip, Charles, and [Advanced Energy].@

$                  
When Crimson
and Allen were made aware of Athe failure to record the executed assignment documents,@ Davis was presented with signed
documents with incomplete signatures and acknowledgments, which Davis believed
had been back-dated.

$                  
Crimson entered
into a financing agreement with Wells Fargo Bank.  Crimson allowed Wells Fargo
to place liens on the Madisonville Project leases that were assigned to Allen
but not recorded. 

$                  
ADavis requested that his
transaction be rescinded to before the misinformation was presented.@








$                  
The defendants
acted together and caused the original equity to be diluted and transferred to
the defendants, Crimson, and Crimson Exploration in contradiction to the terms
presented prior to Davis VI=s decision to invest.

By reference, Davis VI incorporated the facts above into
each of the five following claims:  (1) common law fraud, (2) statutory fraud,
(3) negligent misrepresentation, (4) breach of fiduciary duty, and (5)
violations of the Texas Securities Act.  In each of four separate sections entitled ACommon Law Fraud,@ AStatutory Fraud,@ ANegligent Misrepresentation,@ and ATexas Securities Act,@ Davis VI alleged the following:

$                  
AThe misrepresentations made to
[Davis VI] by the Defendants were material and false when made.@

$                  
AThe purported facts of the transfer
of the Madison Leases were known to be false when stated by the Defendants, in
order to lure [Davis VI] to invest in this oil and gas venture.@

$                  
Davis VI relied
on the misrepresentations Ato its injury@ and seeks damages.

In a section of its pleading entitled ABreach of
Fiduciary Duty,@ Davis VI alleged the following:

$                  
The
misrepresentations made to Davis by the Defendants, Advanced Energy, Allen,
Allen II, Charles Holtgraves individually, Phillip Holtgraves individually, and
Larry Horbach, individually, were material and false when made.

$                  
AThe purported facts of the transfer
of the Madisonville Leases were known to be false by Defendants when stated to
lure [Davis VI] to invest in this oil and gas venture.@

$                  
AThe actions by the Defendants were
consistent with squandering and failing to protect the assets of Elgin.@

$                  
Davis VI relied
on the fraudulent misrepresentations Ato its injury@ and seeks damages.








Advanced Energy, Allen, and Allen II (collectively referred
to as the AAdvanced Energy Parties@) filed a
third-party petition against Christopher Davis, individually, and his attorney,
individually,[2]
alleging tortious interference with the Wells Fargo financing of the
Madisonville Project.  The Advanced Energy Parties asserted the following five
claims against Christopher Davis:  (1) tortious interference with existing
contract, (2) libel, (3) business disparagement, (4) tortious interference with
prospective relations, and (5) conspiracy.  In their live petition, the
Advanced Energy Parties alleged the following facts, which were incorporated by
reference for each claim:

$                  
Allen held an
interest in oil and gas leases in Madison County, Texas.

$                  
To separate the
Madison County leases from Allen=s other assets, Allen=s board of directors authorized the formation of Allen II
to hold leases and secure financing for drilling.  Davis VI and other preferred
shareholders of Allen stock were offered the opportunity to acquire a pro rata
share of Allen II=s preferred stock.

$                  
Allen
negotiated a financing agreement with Wells Fargo to raise capital for drilling
the Madison County leases.  Wells Fargo sent a summary of the terms and
conditions to Allen, which Allen accepted.  Wells Fargo began preparing the
final documentation for financing.

$                  
Christopher
Davis, as a member of Allen=s board of directors, received a faxed copy of Wells Fargo=s terms and conditions.

$                  
Christopher
Davis=s Texas attorney, acting on behalf
of Christopher Davis, emailed officers of Advanced Energy a letter alleging
conversion of Allen=s assets by Advanced Energy.  The
allegations within the letter were untrue and known to be untrue when made. 
This letter also was sent to Crimson and Wells Fargo.  Thereafter, Wells Fargo
refused to consummate financing.

$                  
Allen II
obtained financing elsewhere on less favorable terms.  Such financing prohibits
Allen II=s participation in future wells to
be drilled on the Madison County leases.

In a section of its pleading entitled ATortious
Interference With Existing Contract,@ the Advanced
Energy Parties alleged the following:

$                  
Allen II had a
contractual relationship with Wells Fargo with which Christopher Davis and his
attorney willfully and intentionally interfered.








$                  
The
interference proximately caused Allen II injury that resulted in loss and
actual damage.

$                  
Allen and Allen
II had a contractual relationship with Crimson as working-interest owners in
the Madison County leases.  The email and letter sent by Christopher Davis and
his attorney was sent willfully and with the intention of interfering with the
contractual relationship between Allen and Allen II and Crimson.

$                  
The
interference proximately caused injury to Allen and Allen II and has caused
actual damage or loss.

In a section of its pleading entitled ALibel@ the Advanced
Energy Parties alleged the following:

$                  
The statements
contained in the letter were published as statements of fact that referred to
the Advanced Energy Parties and were defamatory and false.  

$                  
The statements
caused the Advanced Energy Parties actual injury.

In a section of its pleading entitled ABusiness Disparagement,@ the Advanced
Energy Parties alleged the following:

$                  
AThe letter constitutes the
publishing of disparaging words about the [Advanced Energy] Parties[=] economic interest, that were
false, and the publishing of such false statements caused the [Advanced Energy]
Parties special damages.@

In a section of its pleading entitled ATortious
Interference with Prospective Relations,@ the Advanced
Energy Parties alleged the following:

$                  
AThere is a reasonable probability
that [Allen II] would have entered into a business relationship with Wells
Fargo, and the sending of the letter was an intentional interference with such
relationship.  As noted above, the letter was independently tortious or
unlawful.  The sending of the letter to Wells Fargo proximately caused injury
to [Allen II] and due to which [Allen II] suffered actual damage or loss.@

In a section of its
pleading entitled AConspiracy,@ the Advanced Energy Parties
alleged the following:

$                  
Christopher
Davis, his attorney, and Davis VI had a meeting of the minds to commit the
tortious acts set forth in the claims against the Advanced Energy Parties.








$                  
The intent was
accomplished by sending the letter to Wells Fargo and Crimson, which
proximately caused injury to the Advanced Energy Parties.  The Advanced Energy
Parties suffered actual damage or loss.

C. 
The Procedural Posture

Larry Horbach, Charles Holtgraves, and Phillip Holtgraves
(collectively referred to hereinafter as the AOfficers@) filed special
appearances contesting
the trial court=s exercise of personal jurisdiction over them as to Davis VI=s claims.  The
trial court granted the special appearances.  In response to the Advanced
Energy Parties= cross-claim, Christopher Davis filed a special
appearance, which the trial court also granted.  Davis VI now appeals the trial
court=s ruling as to the
Officers, and, in a cross-appeal, the Advanced Energy Parties appeal the trial
court=s ruling as to
Christopher Davis=s special appearance.

II.  Standard of Review

Whether
a trial court may exercise personal jurisdiction over nonresident corporate
officers is a question of law for de novo review.  See BMC Software Belgium,
N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002).  The trial court
did not issue findings of fact or conclusions of law.  Therefore, all facts
necessary to support the trial court=s rulings and supported by the
evidence are implied in favor of the trial court=s decision.  Id. at 795. Parties may
challenge the legal and factual sufficiency of these implied factual findings. 
Id.  In conducting a no‑evidence analysis, we review the evidence
in the light most favorable to the challenged finding and indulge every
reasonable inference that would support it.  See City of Keller v. Wilson,
168 S.W.3d 802, 822 (Tex.  2005).  We must credit favorable evidence if a
reasonable factfinder could and disregard contrary evidence unless a reasonable
factfinder could not.  See id. at 827.  We must determine whether
the evidence at trial would enable reasonable and fair‑minded people to
find the facts at issue.  See id.  The factfinder is the sole judge of
the credibility of the witnesses and the weight of their testimony.  See id.
at 819.








When reviewing a challenge to the factual sufficiency of
the evidence, we examine the entire record, considering both the evidence in
favor of, and contrary to, the challenged finding.  Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986).  After considering and weighing all the evidence,
we set aside the fact finding only if it is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust.  Pool v. Ford
Motor Co., 715 S.W.2d 629, 635 (Tex. 1986).  The trier of fact is the sole
judge of the credibility of the witnesses and the weight to be given to their
testimony.  GTE Mobilnet of S. Tex. v. Pascouet, 61 S.W.3d 599, 615B16 (Tex. App.CHouston [14th
Dist.] 2001, pet. denied).  We may not substitute our own judgment for that of
the trier of fact, even if we would reach a different answer on the evidence.  Maritime
Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex. 1998).  The amount of evidence
necessary to affirm a judgment is far less than that necessary to reverse a
judgment.  GTE Mobilnet, 61 S.W.3d at 616.

III.  Issues and Analysis








The Texas long‑arm statute governs a Texas court=s exercise of
jurisdiction over nonresident defendants.  Tex.
Civ. Prac. & Rem. Code Ann. '' 17.041B.045 (Vernon
2008).  It allows a court to exercise personal jurisdiction as far as the
federal constitutional requirements of due process will permit.  BMC Software, 83 S.W.3d at 795.  Personal
jurisdiction over a nonresident defendant is constitutional when two conditions
are met:  (1) the defendant has established minimum contacts with the forum
state, and (2) the exercise of personal jurisdiction comports with traditional
notions of fair play and substantial justice.  BMC Software, 83 S.W.3d at 795.  For a defendant
to have sufficient minimum contacts with the forum, it is essential that there
be some act by which the nonresident defendant Apurposefully
avails@ itself of the
privilege of conducting activities in the forum state, thus invoking the
benefits and protections of its laws.  Michiana Easy Livin= Country, Inc. v.
Holten, 168 S.W.3d 777, 784 (Tex. 2005).  Although not determinative,
foreseeability is an important consideration in deciding whether the
nonresident defendant purposefully has established minimum contacts with
Texas.  BMC Software, 83 S.W.3d at 795.  The concept of foreseeability
is implicit in the requirement that there be a substantial connection between
the defendants and Texas arising from their conduct purposefully directed
toward Texas.  See Guardian Royal Exch. Assur., Ltd. v. English China Clays,
P.L.C., 815 S.W.2d 223, 227 (Tex. 1991).  A defendant should not be subject
to a Texas court=s jurisdiction based upon random,
fortuitous, or attenuated contacts.  BMC Software, 83 S.W.3d at 795.

Specific jurisdiction exists when the claims in question
arise from or relate to the defendant=s purposeful
contacts with Texas.  Am. Type Culture Collection Inc. v. Coleman, 83
S.W.3d 801, 806 (Tex. 2002).  In conducting a specific‑jurisdiction
analysis, we focus on the relationship among the defendants, Texas, and the
litigation.  See Guardian Royal, 815 S.W.2d at 228.  For a nonresident
defendant=s contacts with Texas to support an exercise of
specific jurisdiction, there must be a substantial connection between the
defendant=s purposeful contacts with Texas and the operative
facts of the litigation.[3] 
See Moki Mac River Expeditions v. Drugg, 221 S.W.3d 569, 585
(Tex. 2007). 

Davis VI and the Advanced Energy Parties, respectively,
challenge the trial court=s implied findings denying specific
jurisdiction. 

A.  Specific Jurisdiction as to the Officers








In its live petition, Davis VI alleged that the Officers,
and specifically Charles Holtgraves in a memo, misrepresented the status of
Crimson=s transfer of its
leases to the Madisonville Project, when such leases were not actually
transferred.  For each of Davis VI=s claims, Davis VI
made the same allegations: AThe purported facts of the transfer of the
Madisonville Leases were known to be false when stated by the Defendants to
lure [Davis VI] to invest in this oil and gas venture.@  For the purposes
of this court=s jurisdictional analysis, we presume, without
deciding that these allegations are true, and we examine the evidence regarding
the relationship between these allegations and the Officers= purposeful
contacts with Texas.[4]


To meet their burden to negate all potential bases of
jurisdiction, the Officers filed a joint special appearance offering the
following:

$                  
The Officers
are not residents of Texas and are neither required to maintain nor do they
maintain a registered agent for service in Texas.

$                  
The Officers do
not currently engage in business in Texas and have not engaged in business in
Texas nor committed any tort, in whole or in part, within the state.

$                  
The nonresident
Officers do not maintain a place of business in Texas and have no employees,
servants, or agents within the state.

$                  
The nonresident
Officers do not have continuous or systematic contacts with Texas.

$                  
The
allegations by Davis VI do not arise from or relate to contacts by the Officers
with Texas.

$                  
The actions
alleged by Davis VI are directed at alleged activities committed by the
Advanced Energy Parties, but not against any acts or omissions committed by the
Officers in their individual capacities.

Each
of the Officers provided a sworn affidavit in support of his special
appearance; each affiant made the following statements:

$                  
He is not a
resident of Texas.

$                  
He is a private
investor.

$                  
He does not
maintain a registered agent for service in Texas, has no employees, servants, or
agents in Texas, owns no assets in Texas, nor has he committed torts in Texas. 
He has never engaged in business in Texas.








$                  
He serves as
officer, director, or manager of Allen, Allen II, and Advanced Energy.

$                  
Allen and Allen
II have obtained Certificates of Authority in Texas.  Advanced Energy does not
do business in Texas.

$                  
Any contacts he
has had with Texas have been the result of actions taken in his representative
capacity.

In response to the Officers= special
appearances, Davis VI claimed the following:

$                  
The Officers
serve as officers and directors of Allen and Allen II, which are companies
registered in Texas.  Larry Horbach and Charles Holtgraves are also managers
and/or directors of Elgin.

$                  
The Officers
solicited and recruited Davis VI, through Christopher Davis, to invest in the
Madisonville Project.

$                  
Specifically,
the Officers informed Christopher Davis, and thus Davis VI, that Crimson was to
convey all of its other leases and leasehold interests acquired in or around
Madisonville, free of liens or encumbrances, to the Elgin joint venture.

$                  
Charles
Holtgraves falsely represented to Christopher Davis that Crimson completed its
assignment of the Madisonville Leases to the joint venture.  

$                  
By memo,
Charles Holtgraves informed Christopher Davis of the lease assignments and
instructed Davis VI to send funds for investment in Allen.  In return, Davis VI
was to receive ownership interest in Allen=s preferred stock.  Allen would use the funds to acquire an
interest in Elgin.

$                  
The Officers,
as officers and directors of Allen and Allen II, agreed to give Davis VI rights
to restriction on voting and sale of assets in return for his investment.

$                  
Crimson did not
convey the leases to Elgin.

$                  
The Officers= misrepresentations were
purposefully false and violated the Joint Operating Agreement, which required
assignment of the leases.

$                  
The Officers
provided Davis VI with a memo issued by Crimson that proposed a break-up of the
Elgin joint venture due to financing problems.

$                  
The Officers
proposed a second agreement, the Overall Agreement, in which Allen would
acquire a 22.5% ownership interest and Crimson would retain a 77.5% interest in
Elgin=s Madisonville Leases.








$                  
Because the
leases were never transferred under the Joint Operating Agreement, the
percentages proposed in the Overall Agreement were irrelevant and lacked
consideration.

$                  
The Officers
were aware or should have been aware of inconsistencies between the Joint
Operating Agreement and the Overall Agreement.

$                  
The Officers should
have had personal knowledge that the Madisonville Leases were never
transferred.

$                  
The Officers
were managing officers at Allen who entered into the terms and conditions of
the Joint Operating Agreement and who had the duty to ensure compliance with
the Joint Operating Agreement.

$                  
The Officers
continued to represent to Davis VI that Crimson complied with the Joint
Operating Agreement in transferring the leases.

$                  
The Officers
should have been aware of the illusory percentages which formed the Overall
Agreement.

$                  
By entering
into the Overall Agreement, the Officers= conduct demonstrates purposeful intent to defraud Davis
VI.

$                  
Elgin, Crimson,
and Allen, through the Officers, informed Christopher Davis, and hence Davis
VI, that they had executed the Overall Agreement and an assignment, but the
conveyance documents were not recorded.

$                  
Wells Fargo
held encumbrances on the leases, in violation of terms in the Joint Operating
Agreement, and in contradiction to the representations made by the Officers.

$                  
The Officers
engaged in fraud by circumventing terms in the Joint Operating Agreement and
entering into the Overall Agreement.  Such actions were purposeful and as a
direct consequence of the individual actions of the defendants.

$                  
The Officers
misrepresented facts involving the lease transfer and the liens and
encumbrances held on the leases in order to gain investment support from Davis
VI.

$                  
The actions
were perpetuated and directed at Texas and concerned misrepresentations
involving the Madisonville Project that is located in and being conducted in
Texas.

$                  
The Officers
failed to take action against Crimson for its breach of the Joint Operating
Agreement, in failing to transfer the leases.








Davis
VI submitted a number of documents in support of personal jurisdiction over the
Officers.  The evidence is undisputed that the Officers are directors of
Advanced Energy, Allen, and Allen II.

The Officers have the burden of negating all bases of
personal jurisdiction.  See Moki Mac River Expeditions, 221 S.W.3d
at 574.  They may not avoid specific jurisdiction in Texas by claiming any
alleged actions were performed in a corporate capacity, because a corporate
agent is individually liable for fraudulent or tortious acts committed while in
the service of his corporation.  See Hyman Farm Servs., Inc. v. Earth Oil
and Gas Co., 920 S.W.2d 452, 455 (Tex. App.CAmarillo 1996, no
writ); Holberg v. Teal Constr. Co., 879 S.W.2d 358, 360 (Tex. App.CHouston [14th
Dist.] 1994, no writ).  Therefore, we individually assess each of the Officers= contacts with the
forum state.  See SITQ E.U., Inc. v. Reata Restaurants, Inc., 111 S.W.3d
638, 651 (Tex. App.CFort Worth 2003, pet. denied).  In doing
so, we must analyze the degree of connectedness between the forum contacts and
the operative facts of litigation to determine whether the operative facts
involve the Officers= respective contacts with Texas.  See
Moki Mac River Expeditions, 221 S.W.3d at 584B85.








A substantial connection between the Officers= purposeful
contacts with Texas and the operative facts of litigation must exist to find
specific jurisdiction over these nonresidents.  See id. at 585.  Davis
VI alleges that the Officers made misrepresentations regarding the transfer of
the Madisonville leases, and that the Officers= communications
were directed at Christopher Davis in order to procure financial backing from
Davis VI.  The record reflects that a memo, written by nonresident officer
Charles Holtgraves and containing the alleged misrepresentations, originated in
Mission, Kansas, as reflected by Allen=s letterhead.  The
record also contains assertions that the Officers solicited nonresident
Christopher Davis at his Aoffice in Kansas City, Missouri, and
[Christopher Davis=s] agreement/investment discussion on
behalf of Davis VI occurred in Kansas City, Missouri.@  Davis VI has not
otherwise pleaded or presented evidence that the Officers made any
representations in Texas or that Davis VI received or relied upon any
representation in Texas.  There is no evidence that any of the Officers= alleged
communications were made in Texas or received or relied upon by Davis VI in
Texas.  See BMC Software, 83 S.W.3d at 797 (stating that no
representations were made in Texas and no reliance on the representations
occurred in Texas).  The undisputed jurisdictional evidence does not support
Davis VI=s contention that
the Officers committed a tort in whole or in part in Texas to warrant specific
jurisdiction over the Officers.  See id.

Davis VI argues that specific jurisdiction over the
Officers may be based on the  Officers= failure to prove
that their alleged business dealings were not directed toward Texas.  However,
alleged knowledge that the brunt of the alleged damages caused by the alleged
torts would be felt in Texas is insufficient to support specific jurisdiction.  See
Michiana Easy Livin= Country, Inc., 168 S.W.3d at
788B89.  Davis
VI argues that the Officers reasonably should have foreseen being subject to
Texas jurisdiction as a result of their conduct; however, foreseeability
is not determinative in a specific-jurisdiction analysis.  See id.
at 789 (rejecting jurisdiction based solely upon the effects or consequences
felt in an a forum state); BMC Software, 83 S.W.3d at 795; Guardian
Royal Exch. Assur., Ltd., 815 S.W.2d at 227 (A[F]oreseeability
is implicit in the requirement that there be a substantial connection between
the defendants and Texas arising from their conduct purposefully directed
toward Texas.@).  Furthermore, although Davis VI
complains that the Officers served as officers or directors of Texas-based
Elgin, to whom Davis VI claims the Madisonville leases should have been
transferred, the harm and facts alleged pertain to misrepresentations allegedly
made by the Officers, irrespective of where the leases were located.  See
Michiana Easy Livin= Country, Inc., 168 S.W.3d at
789 (focusing specific jurisdiction analysis on a defendant=s conduct and
connection to the forum state). 








Under the applicable standards of review and based on Davis
VI=s allegations and
the undisputed evidence, the evidence is legally and factually sufficient to
support the trial court=s implied finding that there is no
substantial connection between the Officers= purposeful
contacts with Texas and the operative facts of the litigation.  See Moki Mac
River Expeditions, 221 S.W.3d at 585B88 (concluding
that there was no specific jurisdiction based on the lack of a substantial
connection between the defendant=s purposeful
contacts with Texas and the operative facts of the litigation); BMC Software,
83 S.W.3d at 797 (concluding no specific jurisdiction existed for contact that
occurred outside of Texas).  Accordingly, we overrule Davis VI=s sole issue on
appeal and affirm the trial court=s order granting
the Officers= special appearances.

B.  Specific Jurisdiction as to Christopher Davis

The Advanced Energy Parties= five claims stem
from a letter sent by Christopher Davis=s Texas attorney
to Advanced Energy=s board members.  The letter states in
pertinent part:

Chris Davis has requested that we write you on his behalf as both a
major preferred shareholder of [Allen] and as a director of [Advanced Energy]
and [Allen] regarding the apparent attempt by certain [Advanced Energy]
shareholders to convert [Allen] assets without proper corporate authorization
or shareholder consent by affected [Allen] preferred shareholders.  

The
Advanced Energy Parties claim the letter is disparaging, untrue, and known to
be untrue when written.  They also claim  that Allen and Allen II were
negotiating financing with Wells Fargo, the lender that had begun preparing
final documentation for financing at the time the letter was sent.  An email
with the attached letter was sent to both Crimson and a Wells Fargo
representative.  According to the Advanced Energy Parties= allegations, upon
receipt of the letter, Wells Fargo terminated the pending loan transaction with
Allen.  The Advanced Energy Parties claim that the financing they secured
elsewhere was on less favorable terms.

To meet the burden to negate all potential bases of
jurisdiction, Christopher Davis filed a special appearance proving the
following: 








$                  
Christopher
Davis is a Kansas resident.  He is not a resident of Texas and neither
maintains nor is required to maintain a registered agent for service in Texas. 

$                  
He does not and
has not engaged in business in Texas, nor committed any tort within the state
of Texas.  He is a representative of Davis VI, a Missouri partnership, whose
general partner is a Missouri limited liability company.

$                  
As a
representative for Davis VI, he was solicited in Missouri by officers of
Advanced Energy and Allen to invest in the Madisonville Project. 

$                  
Davis VI
invested in the project and became a preferred shareholder of Allen.  Davis is
a director in Allen and Advanced Energy.  Advanced Energy is a ADelaware Corporation, with its
headquarters located in Mission, Kansas.  [Allen] is a Nebraska Corporation,
with its headquarters in Mission, Texas [sic].  [Allen] does not conduct
business in Texas.@

$                  
He does not
maintain a place of business in Texas and has no employees, servants, or agents
in the state.

$                  
He does not
have continuous or systematic contacts with Texas.

$                  
The Advanced
Energy Parties= claims do not arise from or relate
to his contacts within the State of Texas.

$                  
The Advanced
Energy Parties= claims fail to establish that his
specific conduct or activities were directed at Texas and would justify
imposition of jurisdiction over him.

$                  
The letter was
written on behalf of Davis VI and on his behalf, as a director of Allen; the
letter was not written on behalf of Christopher Davis individually.

$                  
In response to
the Advanced Energy Parties= claim that Allen II had a contractual relationship with Wells Fargo,
Christopher Davis avers that the letter was written in August 2006, but Allen
II did not exist until September 2006.  Therefore, Christopher Davis could not
have tortiously interfered with a non-existent entity.

$                  
The letter was
sent to Allen and Advanced Energy, two companies based outside of Texas.  Any
questioning of the companies= activities, as raised in the letter, is not activity directed at
Texas, but rather, directed at the corporations and the respective officers.

$                  
Any claims
indicating that Christopher Davis interfered with a contractual relationship
among Allen, Allen II, and Crimson is misleading because Christopher Davis is a
director of Allen and Advanced Energy and is no stranger to the contract.








$                  
In response to
any defamation claims, the entities allegedly disparaged by the letter are not
located in Texas, nor were the claims alleged in Texas.

$                  
In response to
claims of interference with a corporate contract, the letter does not show that
Christopher Davis=s personal interests were served by
writing the letter because the letter was written with the intended interests
of the entities involved.

$                  
In response to
claims of tortious interference with prospective relations, Christopher Davis,
as a director, holds an important interest in the relationships asserted. 
However, Allen II did not exist at the time the letter was written, and
therefore, Christopher Davis could not have interfered in a relationship
involving a non-existent entity.

In response to Christopher Davis=s special
appearance, the Advanced Energy Parties claimed the following:

$                  
Christopher
Davis committed a tort in Texas when he directed the letter to be sent to
several companies in Texas:  Wells Fargo, Crimson, and Crimson Operating.[5]

$                  
Any claims by
Christopher Davis that the letter was written in a representative capacity are
belied by the plain language of the letter, which indicates it was written on
his behalf.[6]

$                  
Even if
Christopher Davis sent the letter in a representative capacity, such action was
an ultra vires act he committed individually because neither Allen nor Advanced
Energy authorized the action.

$                  
Even had
Christopher Davis acted in a representative capacity, a corporate officer who
commits tortious or fraudulent conduct directed at the forum state may be held
personally liable.

$                  
Christopher
Davis knew or should have known that Crimson and Wells Fargo would rely on the
information contained in the letter and that the misinformation would damage
the business relationships of the Advanced Energy Parties in Texas.













We examine the record to determine whether there is
sufficient evidence to support the trial court=s implied finding
that it could not exercise personal jurisdiction over Christopher Davis based
on specific jurisdiction.  We consider the evidence pertinent to the Advanced
Energy Parties= jurisdictional allegations.[7]
 Christopher Davis had the burden of negating all
bases of personal jurisdiction.  Moki Mac River Expeditions, 221 S.W.3d at
574.  Though
Davis claims that the letter was written in his representative capacity as a shareholder
and director, a corporate officer or employee is not shielded from the exercise
of specific jurisdiction as to alleged torts for which the officer or employee
may be held individually liable.  Reata Restaurants, Inc., 111 S.W.3d at
651.  In each of their claims, the Advanced Energy Parties allege a tort for
which Christopher Davis could be held individually
liable.  Therefore, there is no blanket protection from jurisdiction simply
because Christopher Davis=s alleged acts were allegedly done in
a corporate capacity.  See D.H. Blair Inv. Banking Corp. v. Reardon, 97
S.W.3d 269, 277 (Tex. App.CHouston [14th Dist.] 2002, pet. dism=d w.o.j.).  Because there is no
pleading or proof of any theory for piercing the corporate veil, this court 
considers only Christopher Davis=s purposeful contacts with Texas.  See Commonwealth Gen. Corp. v. York,
177 S.W.3d 923, 925 (Tex. 2005) (holding, in personal-jurisdiction analysis,
that contacts of corporation could not be considered as contacts of sole
shareholder unless there was evidence that would support a finding that
shareholder and corporation were alter egos, in which case the corporation
would be viewed as the same legal person as the shareholder); Michiana Easy
Livin= Country, Inc., 168 S.W.3d at 785 (stressing that in a
personal-jurisdiction analysis only the purposeful Texas contacts of the
defendant challenging personal jurisdiction are considered).  Therefore, we
assess Davis=s individual contacts with the forum state.  See Reata Restaurants,
Inc., 111 S.W.3d at 651.  In doing so, we analyze the degree of
connectedness between the forum contacts and the operative facts of litigation
to determine whether the operative facts involve Christopher Davis=s contacts with Texas.  See Moki Mac River Expeditions, 221 S.W.3d at 584B85.  

A
substantial connection between the defendant=s purposeful contacts with Texas and
the operative facts of the litigation must exist to find specific jurisdiction
over this non-resident.  See id. at 585.  The operative facts demonstrate
that Christopher Davis purposefully directed his attorney in Texas to send a
letter on his behalf to the parties and a Wells Fargo representative.  These
acts are the basis for the Advanced Energy Parties= claims.  Under
the applicable standards of review, and based on Davis VI=s allegations and
the undisputed evidence, the evidence is legally and factually sufficient to
support the trial court=s implied finding that both Christopher
Davis=s attorney, who
sent the letter at his direction, as well as some recipients of the letter were
located in Texas.  Christopher Davis=s contact with his
attorney in Texas, in directing the letter to be sent, was purposeful conductCconduct that was
not random, attenuated, or fortuitous.  See BMC Software, 83 S.W.3d at
795; Guardian Royal Exch. Assur., Ltd., 815 S.W.2d at 227.  Moreover,
Christopher Davis=s contact with Texas was substantially
connected to and relates to the Advanced Energy Parties= claims.  See
Moki Mac River Expeditions, 221 S.W.3d at 585; Am. Type Culture Collection Inc., 83 S.W.3d at
806.  The evidence is legally and factually insufficient to support the trial
court=s implied finding
that there is no substantial connection between Davis=s purposeful
contacts with Texas and the operative facts of the claims against him.  








As for notions of fair play and substantial justice, only
in rare cases, upon establishing minimum contacts, will such exercise of
personal jurisdiction not comport with fair play and substantial justice.  Guardian
Royal Exch. Assur., Ltd., 815 S.W.2d at 231.  Because Christopher Davis, as
Davis VI=s president and
sole decision maker, initiated suit in Texas against the Advanced Energy
Parties and the Officers, he will be heavily involved in the trial in this case
and previously has worked with a Texas attorney, as alleged, in the key events
leading up to the suit.  These facts, coupled with Texas=s interest in
adjudicating claims filed in Texas for disputes involving Texas property, show
that the exercise of personal jurisdiction over Christopher Davis comports with
notions of fair play and substantial justice.  See id.  

Under the applicable standards of review and based on the
Advanced Energy Parties= allegations and the undisputed evidence,
the evidence is legally and factually insufficient to support the trial court=s implied finding
that it could not exercise personal jurisdiction over Christopher Davis based
on specific jurisdiction.  See Michiana Easy Livin= Country, Inc., 168
S.W.3d at 784; BMC Software, 83 S.W.3d at 795.  Therefore, we sustain
the Advanced Energy Parties= sole issue.  Accordingly, we reverse the
trial court=s order sustaining Christopher Davis=s special
appearance and remand for further proceedings in accordance with this opinion.

IV.  Conclusion

For the foregoing reasons, we affirm the order granting the Officers= special
appearances and reverse the order granting Christopher Davis=s special
appearance.

 

 

 

 

/s/      Kem Thompson Frost

Justice

 

 

Panel consists of Justices Anderson and Frost and Senior
Justice Hudson.*









[1]  Crimson is formerly known as GulfWest Energy, Inc.





[2]  The claims against Christopher Davis=s attorney were later non-suited.





[3]  We do not adjudicate the merits of the parties= claims when conducting an analysis of personal
jurisdiction.  Bougie v. Technical Risks, Inc., No.
14-03-01222-CV, 2004 WL 2902508, at *5 (Tex. App.CHouston [14th Dist.] Dec. 16, 2004, no pet.) (mem. op.).  Rather, we
review the claims and the evidence regarding only the jurisdictional facts.  Id. 
In this case, because the parties=
liability in tort is not a jurisdictional fact, we do not address the merits of
those claims.  See id.  

 





[4]  See Bougie, 2004 WL
2902508, at *5. 





[5]  Crimson Exploration Operating, Inc. (Crimson
Operating) is a party to Davis VI=s original suit, but
is not a party on appeal.





[6]  The language in the letter to which the Advanced
Energy Parties cite is provided above.





[7]  Though neither the Supreme Court of Texas nor this court appears to
have addressed this issue, we agree with other courts that generally a
specific-jurisdiction analysis should be performed on a claim-by-claim basis.  See
Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 274B75 (5th Cir. 2006) (analyzing
specific jurisdiction on a claim-by-claim basis because the Due Process Clause
prohibits the legitimate exercise of specific jurisdiction over a defendant
with respect to one claim to justify the exercise of specific jurisdiction with
respect to another claim that does not arise from or relate to the defendant=s forum contacts); Barnhill v.
Automated Shrimp Corp., 222 S.W.3d 756, 767 (Tex. App.BWaco 2007, no pet.).  However, in
this case, because the Advanced Energy Parties= five claims stem from the same facts, that Davis
instructed his Texas attorney to write a disparaging letter to the parties and
Wells Fargo, and because Davis=s special appearance is based on the same defense, i.e. that the letter
was written on his behalf as a director and shareholder rather than an individual,
we review the claims together.





*  Senior Justice J. Harvey Hudson sitting by
assignment.