

# IN THE
# TENTH COURT OF APPEALS

### No. 10-09-00264-CV

**BRIAN BATES, INDIVIDUALLY, AND
ARIZONA INTERNATIONAL CREDENTIAL
EVALUATORS, LLC,**

**Appellants**

 **v.**

**GLOBAL CREDENTIAL EVALUATORS, INC.,**

**Appellee**

### From the 272nd District Court
### Brazos County, Texas
### Trial Court No. 08-002216-CV-272

## MEMORANDUM OPINION

At a conference in San Antonio, Texas, Jean Ringer, principal operating officer for Global Credential Evaluators, Inc. ("GCE"), approached Brian Bates about performing credentialing work for GCE. Ringer operated the GCE office in College Station, Texas. GCE owner Marilyn Hesser was located in Virginia where GCE was incorporated and headquartered. Shortly after Bates signed an agreement with GCE,

Ringer acquired GCE, incorporating it in Texas and transferring its headquarters to College Station. Bates formed GCE West, LLC in Arizona.

A dispute eventually arose among the parties. They attended mediation in Austin, Texas and entered a settlement agreement. GCE later sued Bates and Arizona International Credential Evaluators, LLC ("AZICE"), formerly GCE West, alleging several causes of action, including breach of the settlement agreement. Bates and AZICE filed a special appearance. After a hearing, the trial court denied the special appearance and made the following conclusions of law:

> The claims asserted by [GCE] arise from the August 2002 joint venture agreement between the parties.
>
> The State of Texas has an interest in adjudicating disputes concerning agreements performable in Texas.
>
> [Bates and AZICE] purposefully established contacts with the State of Texas.
>
> The exercise of personal jurisdiction over [Bates and AZICE] in this suit will not offend traditional notions of fair play and substantial justice and would not violate due process.
>
> [Bates and AZICE] failed to meet their burden to negate all bases of personal jurisdiction asserted.

In one issue, Bates and AZICE challenge the denial of their special appearance. We affirm.

## STANDARD OF REVIEW

A plaintiff must plead "sufficient allegations" to bring a nonresident defendant within the long-arm statute. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 793 (Tex. 2002). The plaintiff's original pleadings as well as its response to the defendant's

special appearance can be considered in determining whether the plaintiff satisfied that burden. *Flanagan v. Royal Body Care, Inc.*, 232 S.W.3d 369, 374 (Tex. App.—Dallas 2007, pet. denied); *see* TEX. R. CIV. P. 120a(3). The defendant must then negate "all jurisdictional bases." *BMC Software*, 83 S.W.3d at 793. In considering the denial of a special appearance, we determine only the issue of jurisdiction, not liability. *See Michiana Easy Livin' Country Inc. v. Holten*, 168 S.W.3d 777, 791-92 (Tex. 2005). We review a court's findings of fact for legal and factual sufficiency and its conclusions of law *de novo*. *See BMC Software*, 83 S.W.3d at 794.

### APPLICABLE LAW

Texas courts may assert *in personam* jurisdiction over a nonresident if two requirements are met. First, the "Texas long-arm statute authorizes the exercise of jurisdiction." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). Under the statute, a nonresident does business in Texas if he: (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state; (2) commits a tort in whole or in part in this state; or (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (Vernon 2008). Second, the exercise of jurisdiction must be "consistent with federal and state constitutional due-process guarantees." *Moki Mac*, 221 S.W.3d at 574. Exercise of personal jurisdiction over a nonresident satisfies due process when: (1) the defendant has minimum contacts with Texas; and (2) the exercise of jurisdiction

comports with traditional notions of fair play and substantial justice. *BMC Software*, 83 S.W.3d at 795.

Minimum contacts arise if the defendant "purposefully availed" himself of the "privileges and benefits of conducting business in the foreign jurisdiction." *BMC Software*, 83 S.W.3d at 795. Three issues are relevant to this inquiry: (1) only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person; (2) the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated; and (3) the "defendant must seek some benefit, advantage or profit by 'availing' itself of the jurisdiction." *Moki Mac*, 221 S.W.3d at 575. "[T]he minimum-contacts analysis is focused on the quality and nature of the defendant's contacts, rather than their number." *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 339 (Tex. 2009).

Minimum contacts must establish specific or general jurisdiction. *See Barnhill v. Automated Shrimp Corp.*, 222 S.W.3d 756, 762 (Tex. App.—Waco 2007, no pet.). Specific jurisdiction exists where the cause of action "arises from or is related to an activity conducted within the forum." *BMC Software*, 83 S.W.3d at 796. The focus is on the "relationship among the defendant, the forum and the litigation." *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex. 1991). General jurisdiction exists where the "defendant's contacts in a forum are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the

forum state." *BMC Software*, 83 S.W.3d at 796. The focus is on "a showing of substantial activities in the forum state." *Guardian*, 815 S.W.2d at 228.

## ANALYSIS

In one issue, Bates and AZICE argue that the trial court erred by denying their special appearance because they are not subject to the jurisdiction of Texas courts.

### Specific Jurisdiction

Two requirements must be met to establish specific jurisdiction: (1) contacts "must be purposeful;" and (2) the "cause of action must arise from or relate to those contacts." *Am. Type Culture Collection v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002); *Barnhill*, 222 S.W.3d at 763. GCE alleged that Bates and AZICE: (1) "purposefully availed themselves of the privileges and benefits of conducting business in Texas by entering into a contract with a Texas resident;"[1] and (2) "committed a tort, or series of torts, which are the subject of this lawsuit, in whole or in part in Texas."[2]

**Purposeful Contacts**

Bates testified that he resides in Arizona and has never lived in Texas, registered to vote in Texas, paid taxes in Texas, had an office in Texas, or advertised/traveled outside Arizona to seek business. He similarly testified that neither AZICE nor GCE

---

[1] In its petition, GCE alleged jurisdiction based on the mediated settlement agreement. In its response to the special appearance, GCE alleged additional jurisdictional facts, including the contractual business relationship. We look at both to determine whether personal jurisdiction exists. *See Flanagan v. Royal Body Care, Inc.*, 232 S.W.3d 369, 374 (Tex. App.—Dallas 2007, pet. denied); *see also* TEX. R. CIV. P. 120a(3).

[2] On appeal, Bates and AZICE challenge the sufficiency of GCE's pleadings as to this allegation. However, this argument was not presented to the trial court. *See* TEX. R. APP. P. 33.1.

West has had such contacts with Texas. Bates testified that he had no ownership in GCE and did not serve as an officer, director, owner, manager, or employee of GCE.

After the conference in San Antonio, Bates testified that he communicated with both Ringer and Hesser for negotiation purposes. He signed a "joint venture agreement," dated August 2002, with GCE, "a Virginia corporation." The agreement identified Bates as a "contractor" and stated that Virginia law governed. Although the agreement terminated after one year, the parties' business relationship continued.

In her affidavit, Ringer stated that she incorporated GCE in Texas and moved its headquarters to College Station in October 2002. Bates testified that Ringer represented that she was buying GCE from Hesser, but he never saw any documents to this effect. Bates thought he was entering a business relationship with a Virginia corporation. However, Ringer stated that Bates knew of her intent to incorporate GCE in Texas and knew that his primary relationship would be with the Texas office. She explained that they agreed that she would supervise Bates and Bates would report to the Texas office.

Bates testified that Ringer was not involved in the formation of GCE West. Bates testified that neither Ringer nor GCE had an ownership interest in GCE West. Ringer, however, claimed that GCE West was formed as a result of the parties' agreement. He also created the GCE West website, which allowed applicants to print documents to be completed and returned to him. The website contained contact information for both Bates and the Texas office.

Bates testified that he and Ringer were in constant communication via telephone and daily emails. He sent completed evaluations to GCE, communicated with other

Texas employees of GCE, and exchanged documents with GCE. He initially deposited funds into GCE's Texas bank account and arranged to handle credit card payments through the account. When GCE West established a bank account in Arizona, Bates deposited the funds into the account and then transferred funds to GCE's Texas account. Bates testified that Ringer was a signatory on GCE West's bank account.

Ringer stated that the Texas office maintained the master client list, requiring other offices, including Arizona, to submit names, reference numbers, and payment amounts to the Texas office on a monthly basis. Bates testified that he visited Texas on one occasion to meet with Ringer and others to prepare GCE's membership application for the National Association of Credential Evaluations Services.

Bates explained that the purpose of the credentialing business is to:

[E]stablish some guidelines so that we can determine if a degree from another institution in another country is essentially the same as something that would be familiar to an admissions officer or an employer or to an immigration law judge working in the United States.

Ringer stated that Bates prepared evaluations for several Texas clients, including USA Employment, West African Management Services, University of Phoenix in Texas, and DeVry University in Texas. Bates testified that GCE West performed about 6,000 evaluations. He performed about 100 evaluations over the years for USA Employment and 25 for West African, but testified that he was contacted by these companies and even met with someone from USA Employment in Arizona on three occasions.

Bates testified that less than 10% of clients lived in Texas or wanted to work/attend school in Texas and 12.6% of all evaluations were from Texas or Virginia.

He testified that business generated in Texas declined over the years. In 2003, 59% of evaluations came from Texas and Virginia, half of which came from Texas. In 2004, the amount decreased to 26%. The amounts dropped to virtually nothing in 2005. In 2006, Bates performed seven evaluations and in 2007, only one evaluation. Ringer stated that "Texas-based applicants make up a significant portion of [Bates's] clientele" and that Bates "actively solicited the business of Texas-based entities." She explained that GCE, including the Arizona office, has entered 19,639 applications, 36.55% from Texas. Ringer stated that Bates represented GCE at a conference in Colorado, at which his duties included the "solicitation of representatives of Texas-based entities."

Bates was also compensated for his services. Bates testified that he received 50% of the client fee and 50% of any rush fees for evaluations from the Texas or Virginia offices. If he generated the business himself, he received 80% of the fee.

The final contacts Bates had with Texas include attending mediation and entering a settlement agreement with GCE. According to the petition, the agreement required that Bates and AZICE pay settlement funds to GCE, redirect telephone calls to GCE, assign the website and email address to GCE, return files and supplies to GCE, and forward mail, faxes, and applications to GCE in Texas.

Bates and AZICE argue that merely entering a settlement agreement does not establish minimum contacts. However, "a nonresident may purposefully avoid a particular jurisdiction by structuring its transactions so as to neither profit from the forum's laws nor be subject to its jurisdiction." *Retamco*, 278 S.W.3d at 340 (quoting

*Michiana*, 168 S.W.3d at 785.). Bates testified that the agreement did not contain a clause providing that personal jurisdiction had not been waived.

Moreover, attending mediation and entering a mediated settlement agreement are not Bates's and AZICE's only contacts with Texas. "In order to determine whether litigation results from injuries that arise out of or relate to activities a defendant has purposefully directed to another state, *all of the activities* the defendant has so directed to that state must obviously be taken into consideration." *P.V.F., Inc. v. Pro Metals*, 60 S.W.3d 320, 326 (Tex. App.—Houston [14th Dist] 2001, pet. denied) (emphasis added); *see Intercarga, S.A. v. Fritz Cos.*, No. 14-02-00297-CV, 2003 Tex. App. LEXIS 5119, at *18 (Tex. App.—Houston [14th Dist] June 19, 2003, no pet.) (mem. op.).

In doing so, we find that Bates's and AZICE's contacts with Texas exceed merely entering a contract with a Texas resident. Although GCE was incorporated in Virginia at the time, the record contains evidence showing that Bates signed the agreement knowing he was affiliating himself with a Texas business and Texas residents, with whom he would regularly communicate and conduct business.[3] *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479, 105 S. Ct. 2174, 2185, 85 L. Ed. 2d 528 (1985) ("Prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" are appropriate factors.); *see also Barnhill*, 222 S.W.3d at 764. Bates's and AZICE's "ongoing communications" with GCE are not merely "incidental," as he claims. Rather, contracting with an "out-of-state

---

[3] Bates and AZICE raise a question as to whether the parties actually entered into a joint venture. "Whether the joint venture agreement in fact creates a joint venture goes to the question of liability for the alleged breach, and not to the question of jurisdiction." *Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662, 666 (Tex. 1987).

party," exchanging information, or communicating with a Texas corporation while performing a contract are factors to consider. *Burger King*, 471 U.S. at 479, 105 S. Ct. at 2185.

Additionally, that Bates and AZICE were located in Arizona is a "mechanical" or "conceptualistic" theory on which personal jurisdiction does not turn. *Burger King*, 471 U.S. at 478, 105 S. Ct. at 2185; *Barnhill*, 222 S.W.3d at 764. The record shows that a significant amount of the work Bates performed was generated in Texas and affected Texas residents. During his testimony, Bates admitted that he profited from the work, collected fees from Texas residents, regularly communicated with Texas residents, and did business with GCE, a Texas corporation, for over four years. *See Burger King*, 471 U.S. at 478, 105 S. Ct. at 2185; *see also Barnhill*, 222 S.W.3d at 763.

Considering "prior negotiations, contemplated future consequences, the terms of the contract[s], and the parties' actual course of dealing," Bates's and AZICE's acts establish that they purposefully availed themselves of all the benefits, advantages, and profits that Texas has to offer. *Barnhill*, 222 S.W.3d at 766 (quoting *KMG Kanal-Muller-Gruppe Deutschland GMBH & Co. KG v. Davis*, 175 S.W.3d 379, 389 (Tex. App.—Houston [1st Dist.] 2005, no pet.)); *see Burger King*, 471 U.S. at 479, 105 S. Ct. at 2185.

**Causes of Action**

"A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006); *see Barnhill*, 222 S.W.3d at 767. A plaintiff need not "establish jurisdiction for each claim to cases where all claims arise

from the same contacts." *Sutton v. Advanced Aquaculture Sys.*, 621 F. Supp. 2d 435, 442 (W.D. Tex. 2007). "[J]urisdiction is properly asserted over claims when the *contacts* meet the minimum contact standard." *Id.*

GCE alleged misappropriation of trade secrets, unfair competition, breach of fiduciary duty and the duty of loyalty, violations of the Theft Liability Act, tortious interference, breach of the mediated settlement agreement, breach of contract, promissory estoppel, and conspiracy. These claims are based on the alleged misappropriation, theft, use, and/or disclosure of GCE's "trade secrets and confidential, proprietary and business-sensitive information," theft of fees, and interference in the prospective business relationships of GCE.

As a result of their relationship with Texas-based GCE, Bates and AZICE would have collected fees, gained confidential information, and had the ability to use information. *See Johnson v. Schlotzsky's, Inc.*, No. 03-03-00468-CV, 2003 Tex. App. LEXIS 10566, at *13-14 (Tex. App.—Austin Dec. 18, 2003, no pet.) (mem. op.). It would have been foreseeable that a misuse of GCE's confidential information or a deprivation of fees to which GCE was entitled, would negatively affect GCE in Texas. *See Glattly v. CMS Viron Corp.*, 177 S.W.3d 438, 449 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Bates's and AZICE's liability, if any, is directly related to their business relationship with a Texas business involving Texas residents and servicing Texas clients. These business contacts led to the parties' dispute and, ultimately, the settlement agreement. Thus, we conclude that GCE's claims arise out of Bates's and AZICE's business contacts with Texas. *See Retamco*, 278 S.W.3d at 340-41; *see also Deloitte & Touche Netherlands*

*Antilles & Aruba v. Ulrich*, 172 S.W.3d 255, 264 (Tex. App.—Beaumont 2005, pet. denied); *Conwill v. Greenberg Traurig, L.L.P.*, No. 09-4365 SECTION I, 2009 U.S. Dist. LEXIS 119214, at *21-22 (E.D. La. Dec. 22, 2009).

**Fair Play and Substantial Justice**

Whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice requires us to consider the: (1) burden on the defendant; (2) "interests of the forum state in adjudicating the dispute;" (3) "plaintiff's interest in obtaining convenient and effective relief;" (4) the "interstate judicial system's interest in obtaining the most efficient resolution of controversies;" and (5) "shared interest of the several States in furthering fundamental substantive social policies." *Guardian*, 815 S.W.2d at 228. In few cases "will the exercise of jurisdiction not comport with fair play and substantial justice" when the defendant "purposefully established minimum contacts with the forum state." *Id.*

Bates and AZICE argue that subjection to the jurisdiction of Texas courts violates traditional notions of fair play and substantial justice because individuals will be discouraged from mediating in Texas and because they would not anticipate that voluntarily participating in mediation would subject them to jurisdiction. As previously discussed, the mediation and subsequent settlement are not their only contacts with Texas. Moreover, Texas maintains an interest in "adjudicating the claims of Texas residents" and is "a convenient forum for the litigants." *Lewis v. Indian Springs Land Corp.*, 175 S.W.3d 906, 919 (Tex. App.—Dallas 2005, no pet.). Not only GCE, but also Bates and AZICE, will receive the "benefits and protections of our laws." *Id*.

Additionally, "modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." *Guardian Royal,* 815 S.W.2d at 231. While "litigation away from home creates hardship for a defendant…there is no legal requirement that this hardship must be borne instead by the plaintiff whenever the defendant is not found in the state of the plaintiff's residence." *Wright v. Sage Eng'g, Inc.*, 137 S.W.3d 238, 253-54 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

Finally, litigation in Texas will also serve the interests of the "interstate judicial system." *Lewis*, 175 S.W.3d at 919. Parties, potential witnesses and documents may exist in Texas. *See id*. The "shared interest of other states in furthering fundamental substantive social policies, can be implemented by Texas courts as effectively" as those in Arizona. *Id*. We cannot say that the exercise of Texas jurisdiction over Bates and AZICE offends traditional notions of fair play and substantial justice.

## CONCLUSION

Because we find that the court properly denied Bates's and AZICE's special appearance, we overrule their sole issue and affirm the trial court's judgment.

FELIPE REYNA
Justice

Before Chief Justice Gray,
 Justice Reyna, and
 Justice Davis
 (Chief Justice Gray concurring with note)*
Affirmed
Opinion delivered and filed May 5, 2010
[CV06]

\*     (Chief Justice Gray concurs in the Court's judgment affirming the order of the trial court.  A separate opinion will not issue.)